## LAWSON v. UNITED STATES MINING COMPANY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH
CIRCUIT.

No. 2.   Argued October 11, 12, 1906.—Decided October 21, 1907.

One in possession of the surface of a mining claim under a patent from
the United States is presumably in possession of all beneath the surface,
and, under § 3511, Rev. Stat., Utah, may maintain an action in equity
to quiet title to a vein beneath the surface and to enjoin the removal
of ore therefrom. *Holland* v. *Challen*, 110 U. S. 15, followed; *Boston
&c. Mining Co.* v. *Montana Ore Co.*, 188 U. S. 632, distinguished.

The ownership of the apex of a vein must be established before any extra-
lateral title to the vein can be recognized.

Discovery is the all-important fact upon which title to mines depends, and
where there is a single broad vein whose apex or outcroppings extend
into two adjoining mining claims the discoverer has an extralateral
right to the entire vein on its dip.

It is the duty of this court to accept the findings of the Circuit Court of
Appeals unless clearly and manifestly wrong.

Acceptance by the Government of location proceedings had before the
statute of 1866, and issue of a patent thereon, is evidence that such
proceedings were in accordance with the rules and customs of the local
mining district.

Priority of right to a single broad vein in the discoverer is not determined
by the dates of the entries or patents of the respective claims, and priority
of discovery may be shown by testimony other than the entries and
patents.

In the absence from the record of an adverse suit there is no presumption
that anything was considered or determined except the question of the
right to the surface.

134 Fed. Rep. 769, affirmed.

VOL. CCVII—1                                                    (1)

THIS suit was commenced in the Circuit Court of the United States for the District of Utah by the United States Mining Company, claiming to be the owner of certain mining property, and praying that its title thereto be quieted and the defendant restrained from taking any ore therefrom. Jurisdiction was founded on diverse citizenship. In an amended complaint, filed June 2, 1902, it was alleged that the plaintiff is the owner and in possession of four mining claims known as the Jordan Extension, the Northern Light, the Grizzly and the Fairview lode mining claims, the boundaries of each being given; that these mining claims are adjacent to each other and to certain other mining claims, all owned and worked by the plaintiff as one property for mining purposes; that beneath the surface of the claims above mentioned is a vein or lode of great value; that the defendants wrongfully claim to own said vein or lode and the ores and minerals therein contained; that they have by means of secret underground works obtained access thereto and have mined, extracted and removed large quantities of valuable ores therefrom; that they threaten to continue such wrongful and unlawful invasion of the premises and to continue to mine, extract and remove ores and minerals; that the defendants are in possession of a mining claim adjacent to the four mining claims of plaintiff, known as the Kempton mining claim, United States Lot 255, which was located in the year 1871, and on information and belief that the defendants pretend that the mineral deposits and ores under, and beneath the surface of the four mining claims above mentioned are in and part of a mineral vein and lode belonging to and having its apex in said Kempton mining claim and on the dip of said alleged vein, which pretense the plaintiff charges to be contrary to the truth. The plaintiff further alleges that it is the owner and in possession of two certain mining claims, one named the Jordan Silver Mining Company's Mine, but usually known as the "Old Jordan," located December 17, 1863; the other the Mountain Gem Lode and Mining Claim, located August 20, 1864, the boundaries of each of which are given;

that in these two claims there is a lode, bearing silver and other metals, whose apex is within the surface boundaries; that the dip of said lodes is toward the Kempton claim occupied by the defendants, and that if there be any mineral vein or lode in the Kempton claim it is not one that has its apex within the limits of that claim but is a part of the lodes apexing within the "Old Jordan" and Mountain Gem claims. The relief prayed for was a decree quieting plaintiff's title and restraining the defendants from mining and removing any ores or minerals. To this amended complaint the defendants filed a demurrer, stating, as one of the grounds thereof, that the plaintiff had an adequate remedy at law. This demurrer was overruled, and thereupon the defendants filed an answer and subsequently an amended answer, setting forth their title to the Kempton mining claim, and also to a claim known as the Ashland mining claim, and alleging that there are lodes whose apices are within these claims; that on their dip they enter beneath the surface of the plaintiff's claims, and that it is upon them that defendants have been mining; that the Kempton claim was patented to their grantors and predecessors in interest on February 23, 1875. They further deny that the "Old Jordan" claim was located on December 17, 1863, or patented July 14, 1877; deny that the Mountain Gem claim was located on August 20, 1864, or that a patent had been issued on said alleged location. They further aver that if there be any lode or vein in either the "Old Jordan" or the Mountain Gem claims, that such lode or vein is entirely distinct from those which have their apices in the Kempton and Ashland claims. On the hearing the court denied the application of the defendants to set the case for trial as a law case before a jury. At the same time it entered a decree dismissing the plaintiff's bill. From this decree the plaintiff appealed to the Circuit Court of Appeals (67 C. C. A. 587; 134 Fed. Rep. 769), which reversed the decree of dismissal, and remanded the case with instructions to enter a decree for the plaintiff in conformity with the prayer of the bill. Thereupon,

on application of the defendants, the case was brought to this court on certiorari.

*Mr. Charles J. Hughes, Jr.,* with whom *Mr. Ogden Hiles* and *Mr. Charles C. Dey* were on the brief, for petitioners:

This action should be dismissed for want of equity. The bill, which alleges that respondent has the legal title and is in possession of the ore, was drafted so as to obviate a demurrer for want of equity, and to render it immune to the objection that it is an ejectment bill, and thus evade a jury trial.

Failure to allege that the title of complainant has been established by at least one trial and verdict at law, is a prime test and proof that it is an ejectment bill. In order for a party in possession to maintain a bill of peace for the purpose of quieting his title to land against a single adverse claimant ineffectually seeking to establish a legal title, by repeated actions of ejectment, it is necessary for the bill to aver that complainant's title has been established at law; and where it appears from the bill that an action at law involving the same questions has been commenced but has not been tried, it is a fatal defect. *Boston &c. Mining Co.* v. *Montana Ore Co.*, 188 U. S. 632, 641; 1 Daniell's Chan. Pl. Perkins, 3d Am. Ed., 573; Pomeroy, Eq., §§ 177, 248, 253; Adams, Eq., 331; Bainbridge on Mines, 505.

In mining cases where irreparable mischief is being done or threatened, going to the destruction of the substance of the estate, such as the extracting of ores from a mine, and the legal title is in dispute, the modern practice is to require an action at law to be brought to try the legal title, and then to allow an ancillary action on the equity side of the court, in aid of the action at law, and for an injunction to preserve the property, pending the legal proceedings for the determination of the title. *Earhart* v. *Boaro*, 113 U. S. 537, 538; *Stevens* v. *Williams,* 5 Morrison's Min. Rep. 449–453; Morrison's Min. Rights, 12th ed., 334, 335.

In this case there is no ground of equitable jurisdiction.

All the matters set up affecting the title are of legal cognizance in which the parties have a constitutional right to a trial by jury. *Hipp* v. *Babin*, 19 How. 271; *Lewis* v. *Cocks*, 23 Wall. 466.

Section 3511, Rev. Stat. of Utah of 1898, is not applicable in suits to quiet title in the Federal courts of that State; nor by that statute can the legal title to land be settled in a suit to quiet title without the intervention of a jury. *Park* v. *Williamson*, 21 Utah, 279, 285, held that where there are both equitable issues, and issues of fact in the case, the court should first determine the equitable issue, and then submit the issues of fact to a jury upon proper instruction, and a failure to do so constitutes reversible error.

All other questions apart, the court below ought to have dismissed this bill *sua sponte*, according to the rule established by this court in numerous decisions. *Hipp* v. *Babin*, 19 How. 271, 278; *Parker* v. *Winnipieseogee*, 2 Black, 545, 550; *Lewis* v. *Cocks*, 23 Wall. 466, 470; *Killian* v. *Ebbinghaus*, 110 U. S. 568, 573; *Grand Chute* v. *Winegar*, 15 Wall. 375; *Allen* v. *Pullman Car Co.*, 139 U. S. 658, 662.

Not only do the pleadings show that this is a dispute concerning the legal title only, but the evidence adduced by the respondent in its case in chief proves, without more, that the petitioners were in the actual possession and immediate occupation of the segment of the lode in controversy.

The evidence on the part of respondent, in its case in chief, proves that the "Kempton people" when this suit was brought, were working in mines or workings "owned by them" and which extended from the surface to the lowest level. The testimony shows that the Kempton workings at the surface are inside the Kempton exterior surface boundaries, and on the apex of the lode. Such a possession is an actual and not a constructive possession of the lode throughout its entire depth, on its dip, beyond the northerly side line of the Kempton claim, under adjacent surface ground.

This evidence, in itself, is sufficient to warrant the court in

dismissing the bill. It proves that when the respondent filed this bill it was not actually in possession of the disputed premises, and that its allegation of possession in itself was not true.

Whoever is in possession of the apex of a lode, or of any part of it, is in the *actual* possession of every extralateral part of the lode, which possession of the apex legally secures. *Montana Min. Co.* v. *St. Louis M. & M. Co.*, 102 Fed. Rep. 430.

*Mr. William H. Dickson*, with whom *Mr. George Sutherland*, *Mr. A. C. Ellis, Mr. A. C. Ellis, Jr., Mr. E. M. Allison* and *Mr. Waldemar Van Cott* were on the brief, for respondent:

Where the owner of land is in the possession thereof, and one out of possession asserts an adverse claim or interest therein, the owner, under the laws of the State of Utah, is not required to wait until his title has been settled by an action at law. Sec. 3511, Rev. Stat. of Utah of 1898.

The Federal courts will give effect to the enlarged equitable relief provided for by this act in all cases where the land is vacant, where neither the owner nor the person asserting the adverse claim is in possession, and in all cases where the owner is in the possession of the lands. *Central Pacific R. R. Co.* v. *Dyer et al.*, 1 Sawyer Reps. 641; *Holland* v. *Challen*, 110 U. S. 16; *Reynolds* v. *Crawfordsville First National Bank*, 112 U. S. 405.

While under such statutory provisions a bill to quiet title could not be maintained in the Federal courts where the plaintiff was out of possession and the defendant in possession, *Whitehead* v. *Shattuck*, 138 U. S. 146, it in no way calls in question the correctness of the decisions above cited. See also *Prentice* v. *Duluth Storage Co.*, 58 Fed. Rep. 437; *Stark* v. *Starr*, 6 Wall. 402; *Gillis* v. *Downey*, 85 Fed. Rep. 483; *Dahl* v. *Raunheim*, 132 U. S. 260.

The owner of a legal title, being in possession of a part of a tract of land, is, in contemplation of law, in possession of every-

thing within its exterior boundaries, except as to such part only as he may have been actually ousted from; that the legal title and possession of a part draws to it the possession of the whole, except to the extent that there may have been an actual adverse possession by some other party; that the possession of an intruder, or one without title, or of one even who enters under color of title, is not extended beyond his actual enclosure, or that of which he has taken actual physical possession as against the true owner who is in possession of a part. The possession of a mere trespasser, or even of one entering under color of title, on a lode or vein, who has engaged in the extraction of ore therefrom, cannot be extended beyond the point of his pick, the face of his drift, or other actual opening made by him, as against the true owner who is also in possession. *Labory* v. *Orphan Asylum,* 97 California, 270; *Clark* v. *Courtney,* 5 Pet. 319; *Hunnicut* v. *Peyton,* 102 U. S. 333, 369.

The rule, or doctrine, announced in the foregoing cases applies also to a case in which is involved the question of ownership or possession of a mining claim and the ores beneath the same, and the respondent having title to the Jordan Extension, Northern Light, Grizzly and Fairview, and being also in possession of the surface and portions of the underground works and ore bodies in said claims, is deemed to be in possession of every part and parcel of each of the claims, including all the ore bodies therein, except so far only as the evidence might show it had been actually ousted by petitioners.

Here there is nothing to show an ouster of the respondent by petitioners, from any part or portion of either of said claims, or of any ore body lying beneath them, or either of them.

Respondent's possession is such as enables it to maintain an action of trespass against petitioners, and is the requisite possession to maintain this suit in equity to quiet title. *Mining Company* v. *Tarbet,* 98 U. S. 462; *Empire State-Idaho Co.* v. *Bunker Hill Co.,* 121 Fed. Rep. 973.

MR. JUSTICE BREWER, after making the foregoing statement, delivered the opinion of the court.

The first question is, whether the plaintiff can maintain this suit in equity without a prior adjudication in an action at law of its legal title. The bill alleges ownership and possession. It supported this allegation by patents from the United States of the first four claims mentioned in the bill, and proved that the defendants were working on a vein or body of mineral beneath the surface and extracting ores therefrom. The bill has a double aspect, to quiet title and to restrain defendants from removing any more ores from beneath the surface of these claims. Title by patent from the United States to a tract of ground, theretofore public, *prima facie* carries ownership of all beneath the surface, and possession under such patent of the surface is presumptively possession of all beneath the surface. This is the general law of real estate. True, in respect to mining property, this presumption of title to mineral beneath the surface may be overthrown by proof that such mineral is a part of a vein apexing in a claim belonging to some other party. But this is a matter of defense, and while proof of ownership of the apex may be proof of the ownership of the vein descending on its dip below the surface of property belonging to another, yet such ownership of the apex must first be established before any extralateral title to the vein can be recognized. This suit was not in the nature of an ejectment, to put the defendants out of possession of the space beneath the surface of plaintiff's claims from which they had extracted ore, but to quiet the title of the plaintiff to the vein in which they had been working, and to restrain them from mining and removing any more ore.

Sec. 3511, Rev. Stats., Utah, 1898, reads:

"SEC. 3511. An action may be brought by any person against another who claims an estate or interest in any real property adverse to him, for the purpose of determining such adverse claim."

A statute of a similar character was before this court in *Holland* v. *Challen,* 110 U. S. 15, and it was held that under it a suit might be maintained by one out of possession against another also out of possession to quiet the title of the former to the premises. It was said, quoting from a prior opinion, that it was "a case in which an enlargement of equitable rights is effected, although presented in the form of a remedial proceeding." It was also said (p. 20):

"To maintain a suit of this character it was generally necessary that the plaintiff should be in possession of the property, and, except where the defendants were numerous, that his title should have been established at law or be founded on undisputed evidence or long continued possession, *Alexander* v. *Pendleton,* 8 Cranch, 462; *Peirsoll* v. *Elliott,* 6 Pet. 95; *Orton* v. *Smith,* 18 How. 263.

"The statute of Nebraska authorizes a suit in either of these classes of cases without reference to any previous judicial determination of the validity of the plaintiff's right, and without reference to his possession. Any person claiming title to real estate, whether in or out of possession, may maintain the suit against one who claims an adverse estate or interest in it, for the purpose of determining such estate and quieting the title."

The same question was considered and decided in the same way in respect to a suit, based upon a similar statute, in Iowa, in *Wehrman* v. *Conklin,* 155 U. S. 314. Of course, as pointed out in *Whitehead* v. *Shattuck,* 138 U. S. 146 such a statute cannot be relied upon in the Federal courts to sustain a bill in equity by one out of possession against one in possession, for an action at law in the nature of an action of ejectment affords a perfectly adequate legal remedy. There is nothing in the point decided in *Boston &c. Mining Company* v. *Montana Ore Company,* 188 U. S. 632, which, rightly considered, conflicts with the case of *Holland* v. *Challen.*

It will be further borne in mind that this question was raised by demurrer to the plaintiff's bill and by motion after the

plaintiff had finished its testimony and before the defendants had introduced theirs, and was not renewed at the close of the trial, although until then the motion was not decided. At the time the motion was made the case presented was one of a clear legal title to the four mining claims by patent from the United States, and an unauthorized entry by subterranean workings into the ground below the surface and the mining and extracting of ores therefrom—a case for restraint by injunction, which was part of the relief asked for in the bill. It is insisted that in *Park* v. *Wilkinson*, 21 Utah, 279, the Supreme Court of that State has given a different construction to the statute, but in this we think counsel are mistaken. In that case the plaintiff brought an action which the court says "was in the nature of one in ejectment." To the complaint the defendant, as authorized by the practice in Utah, answered with a cross complaint demanding equitable relief. A jury was empaneled. After the testimony was all in the court ruled against the claim for equitable relief, discharged the jury and entered judgment for the plaintiff. This was held to be erroneous, the Supreme Court saying that "after determining the equitable issue the court should have submitted the case to the jury upon proper instructions." In other words, the equitable relief sought by the defendant having been denied, the case stood as one in the nature of an action of ejectment, which was a common law action, entitling the party to a jury. But in this case upon the allegations of the complaint the plaintiff was in possession and therefore could not maintain an action of ejectment. The testimony which plaintiff offered showed that it was the owner and in possession, and, of course, at that time nothing in the nature of an action of ejectment was shown. And it was only by demurrer to the complaint and by motion after the plaintiff had rested that the question of a right to a jury was raised by the defendants. The decision of the Court of Appeals in this matter was right.

Coming now to the merits, it is not open to dispute that the defendants were taking ore from beneath the surface of the

plaintiff's four claims.   The question, therefore, arises, What right had they to thus mine and remove ore?   They must show that the ore was taken from a vein belonging to them.   Was there a vein?   Where was its apex, and who was the owner or that apex?   The testimony is voluminous, and even with the diagrams accompanying it, it is difficult to come to a satis- factory conclusion as to the facts.

It is insisted that the findings of the Circuit Court should have bound and concluded the Court of Appeals upon ques- tions of fact.   The difficulty with this contention is that there is nothing to show what the Circuit Court found to be the facts.   Whatever might have been suggested by the course of the argument at the hearing, the comments of the court upon such argument, or in announcing its decision, there is nothing in the record to indicate whether its decision was based upon a question of fact or a matter of law.   The record only contains its decree, dismissing the bill.   All else is a matter of surmise, except as may be inferred from the allegations of the pleadings and the scope of the testimony.   While it is apparent that the Circuit Court must have based its decision upon one of two or three grounds, yet upon which it is not certain.   The Circuit Court of Appeals made no separate find- ing of facts, but it filed an opinion which indicates the scope of its decision, and it is the decree of that court which is before us for consideration.   The attitude of the case is very like that of one in which a trial court refers all things to a master who takes the testimony and reports it, with a general finding for the plaintiff or defendant, upon which report the trial court states its views of the facts and the law and enters its decree. An appellate court reviewing such decree will give its con- sideration to the conclusions stated by the trial court, irrespec- tive of the report of the master, unless the issue be so narrow that sustaining the decree of the court necessarily involves an overruling of the master on a matter of fact.

From the opinion of the Court of Appeals it appears that it found that there was a broad vein.   It says: "A careful ex-

amination and consideration of the evidence clearly convinces
us that the stratum of limestone constitutes a single broad
vein or lode of mineral bearing rock extending from the quartz-
ite on one side to the quartzite on the other." This stratum
of limestone underlies the four claims of the plaintiff, and one
of the contentions of the defendants is that there are several
independent veins, one of which has its apex within the surface
lines of the Kempton and another its apex in the Ashland,
that these independent veins continue down through the
stratum of limestone beneath the surface of the plaintiff's claims,
and that it was only from these independent veins that the
defendants were mining and removing ore. Of course, this
difference between the conclusions of the court and the con-
tentions of the defendants affects materially the scope of the
inquiry. If the limestone is not, strictly speaking, a vein,
but a mere stratum of rock through which run several inde-
pendent veins, then the inquiry must extend to the location
of the apex of each separate vein, whereas if the stratum of
limestone is itself a single broad vein, then the inquiry is nar-
rowed to the location of its apex.

With reference to the conclusion of the Court of Appeals it
is sufficient to say that if the testimony does not show that it
is correct, it fails to show that it is wrong, and under those cir-
cumstances we are not justified in disturbing that conclusion.
It is our duty to accept a finding of fact, unless clearly and
manifestly wrong.

Treating this limestone as a single broad vein, it is apparent
that the entire apex is not within the surface of either the
Kempton or Ashland, but that it is also found in the "Old
Jordan" and Mountain Gem, the properties of the plaintiff.
The line which divides the surface of the claims of the defend-
ants from the "Old Jordan" and Mountain Gem claims also
bisects the vein as it comes to the surface. In other words,
part of the apex is within plaintiff's claims and part within
defendants' In such a case the senior location takes the entire
width of the vein on its dip. This was the conclusion of the

Court of Appeals, as shown by this quotation from its opinion (p. 592): ·

"Where two or more mining claims longitudinally bisect or divide the apex of a vein, the senior claim takes the entire width of the vein on its dip, if it is in other respects so located as to give a right to pursue the vein downward outside of the side lines. This is so because it has been the custom among miners, since before the enactment of the mining laws, to regard and treat the vein as a unit and indivisible, in point of width, as respects the right to pursue it extralaterally beneath the surface; because usually the width of the vein is so irregular, and its strike and dip depart so far from right lines, that it is altogether impracticable, if not impossible, to continue the longitudinal bisection at the apex throughout the vein on its dip or downward course; and because it conforms to the principle pervading the mining laws, that priority of discovery and of location gives the better right, as is illustrated in the provision giving to the senior claim all ore contained in the space of intersection where two or more veins intersect or cross each other, and in the further provision giving to the senior claim the entire vein at and below the point of union, where two or more veins with distinct apices and embraced in separate claims unite in their course downward. Rev. Stat. sec. 2336."

We fully endorse the views thus expressed. Discovery is the all-important fact upon which title to mines depends. Lindley, in his work on Mines, 2d ed., vol. 1, sec. 335, says:

"Discovery in all ages and all countries has been regarded as conferring rights or claims to reward. Gamboa, who represented the general thought of his age on this subject, was of the opinion that the discoverer of mines was even more worthy of reward than the inventor of a useful art. Hence, in the mining laws of all civilized countries the great consideration for granting mines to individuals is *discovery*. 'Rewards so bestowed,' says Gamboa, 'besides being a proper return for the labor and anxiety of the discoverers, have the further effect of

stimulating others to search for veins and mines, on which the general prosperity of the State depends.'"

The two thoughts here presented are reward for the time and labor spent in making the discovery, thus adding to the general wealth, and incentive to others to prosecute searches for veins and mines. To take from the discoverer a portion of that which he has discovered and give it to one who may have been led to make an adjoining location by a knowledge of the discovery and without any previous searching for mineral is manifest injustice.

Again, as indicated in the quotation from the Court of Appeals, continuing the line of division shown upon the surface through the descending vein would be attended with great difficulty and uncertainty. Dealing with questions of this nature, a practical view must be taken. Veins do not continue of uniform width in their descent, but are often irregular and broken, and to attempt to make a division of ore according as it appears on the surface, or equally, would require the constant supervision of a court. It is not strange, then, that the custom of miners has been, as stated by the Court of Appeals, to regard and treat the vein as a unit and indivisible in point of width and belonging to the discoverer. This question has been before this court, as well as several of the courts in the mining districts. In *Argentine Company* v. *Terrible Company*, 122 U. S. 478, 484, we said:

"Assuming that on the same vein there were surface outcroppings within the boundaries of both claims, the one first located necessarily carried the right to work the vein."

In *Mining Co.* v. *Mining Co.*, 5 Utah, 3, the question is discussed at some length by Chief Justice Zane. In the course of the opinion it is said (p. 54):

"Under the law of 1866 the surface ground was merely for the convenient working of the lode. The discoverer and first locator took the lode in its entirety. The law contemplated its segregation in its length, not in its width. It refers to lodes between the end lines, not to a part of a lode. No ex-

pression can be found in it indicating an intention to limit the rights of the locator to a portion of the lode in its width.   The discovery of any part of the apex of a vein is regarded by it as a discovery of the entire apex.   And we think that the law of 1872, when all of its provisions are considered together, and in connection with the former law on the subject, as it should be, evinces the same intent.   Under this law the discoverer of any part of the apex gets the right to its entire width, despite the fact that a portion of the width may be outside of the surface side lines of his claim extended downwards vertically.   While he has no right to the extralateral surface he has a right to the extralateral lode beneath the surface."

See also *St. Louis M. & M. Company* v. *Montana M. Company,* Circuit Court of Appeals (9th Cir.), 44 C. C. A. 120; *Empire State-Idaho M. & D. Company* v. *Bunker Hill M. & C. Company,* Circuit Court of Appeals (9th Cir.), 52 C. C. A. 219.   Also another suit between the same parties in the same court, 66 C. C. A. 99; *Last Chance M. Company* v. *Bunker Hill S. M. & C. Company,* Circuit Court of Appeals (9th Cir.), 66 C. C. A. 299.

But it is contended by the defendants that both the entries and patents of the Ashland and Kempton claims were prior in time to the entries and patents of the "Old Jordan" and Mountain Gem, and that such priority of entry and patent conclusively establishes the prior right of the owners to this broad vein; that the failure of the owners of the "Old Jordan" and Mountain Gem to adverse the applications of the owners of the Ashland and Kempton for patent was an admission that the latter had priority of right, and is conclusive against any present testimony as to the dates of the locations.   We had occasion in the recent case of *Mining Company* v. *Tunnel Company,* 196 U. S. 337, to consider to what extent the issue of a mining patent worked an estoppel of the claims of third parties, and it is unnecessary now to repeat the discussion there had.

This case presents the question under different aspects.   The entries and patents of the Ashland and Kempton claims

were, as stated, prior in time to the entries and patents of the "Old Jordan" and Mountain Gem. There is no record of any adverse suits, although it is intimated that there were such suits. In the absence of a record thereof we cannot assume that anything more was presented and decided than was necessary to justify the patents. A patent is issued for the land described and all that is necessarily determined in an adverse suit is the priority of right to the land. This is evident from section 2325, Rev. Stat., which says: "A patent for any land claimed and located for valuable deposit may be obtained in the following manner." In the section the only matters mentioned for examination and consideration relate to the surface of the ground. There is no suggestion or provision for any inquiry or determination of subterranean rights. Lindley, in his work on Mines, 2d ed., vol. 2, sec. 730, says:

"An application for patent invites only such contests as affects the surface area. A possible union of veins underneath the surface cannot be foreshadowed at the time the application is made. When such a condition arises, it is adjusted by reference to surface apex ownership and priority of location not involving any surface conflict. The rule is well settled that conflicting adverse rights set up to defeat an application for patent cannot be recognized in the absence of an alleged surface conflict. Prospective underground conflicts are not the subject of adverse claims."

In *New York Hill Company* v. *Rocky Bar Company*, 6 L. D. 318, the Commissioner of the General Land Office declined to recognize an adverse claim where there was no surface conflict, saying (p. 320):

"In the event that patent should be issued upon said application and any question should thereafter arise as to the right under such patent to follow any vein or lode, as indicated in sec. 2322, it would be a matter for the courts to settle, and I am of the opinion, there being no surface conflict alleged in this case, and without considering any other question relating to the sufficiency of the so-called adverse claim, that you properly

declined to receive the same as an adverse claim, and to that
extent your decision is affirmed."

The same ruling was made in *Smuggler Mining Company* v.
*Trueworthy Lode Claim*, 19 L. D. 356.

Without determining what would be the effect of a judg-
ment in an adverse suit in respect to subterranean rights, if
any were in fact presented and adjudicated, it is enough now
to hold that there is no presumption, in the absence of the
record, that any such rights were considered and determined.
Indeed, in the absence of a record, or some satisfactory evi-
dence, it is to be assumed that the patents were issued without
any contest and upon the surveys made under the direction
of the United States surveyor general, and included only
ground in respect to which there was no conflict. If the sur-
face ground included in an application does-not conflict with
that of an adjoining claimant, the latter is in no position to
question the right of the former to a patent. Take the not
infrequent case of two claims adjoining each other, the bound-
ary line between which is undisputed. If the owner of one
applies for a patent the owner of the other is clearly under no
obligation to adverse that application, even if under any cir-
cumstances he might have a right to do so. Other necessary
conditions being proved, the applicant is entitled to a patent
for the ground. Generally speaking, if the boundary between
the two claims is undisputed the foundation for an adverse suit
is lacking. While a patent is evidence of the patentee's priority
of right to the ground described, it is not evidence that that
right was initiated prior to the right of the patentee of adjoin-
ing tract to the ground within his claim.

Section 2336, Rev. Stat., makes provision for conflict as to
certain subterranean rights. The last sentence of the section
reads: "And where two or more veins unite the oldest or prior
location shall take the vein below the point of union, including
all the space of intersection." *Argentine Company* v. *Terrible
Company, supra.* As the place of union may be far below
the surface, this evidently contemplates inquiry and decision

after patent, and then it can only be in the courts. And the same rule will obtain as to other subterranean rights.

It is further contended that there is no evidence of a valid location of the "Old Jordan" and Mountain Gem prior to the entries of the Ashland and Kempton. Location notices of the "Old Jordan" and Mountain Gem were admitted in evidence, that of the former being as follows:

"Notice.  Jordan S. M. Co.

"The undersigned members of the Jordan Silver Mining Co. claim for mining purposes one share of two hundred feet each and one additional claim of two hundred feet for original discoverer, George R. Ogilvie, on this lead of mineral ore, with all its dips, spurs and angles, beginning at the stake situated one hundred feet northeast of Gardner's shanties in Bingham (Canion) Kanyon, in West Mountain, and running two thousand two hundred feet in a westerly direction along the side of said mountain, on a line with Bingham Canyon, and intend to work the same according to the mining laws of this mining district.

"(Signed by 25 locators.)

"Bingham Kanyon, Salt Lake City, Utah Territory, Sept. 17, 1863.

"A. GARDNER, Recorder."

The Mountain Gem location was similar in form, dated August 20, 1864, and recorded August 24, 1864. Now these location notices were long before the time of the locations of the defendants' claims. It is further contended that the locations of the "Old Jordan" and Mountain Gem were anterior to the act of July 26, 1866 (14 Stat. 251), which was the first legislation of Congress in respect to the granting of mineral claims, and that while that act in its second section recognizes the rights of locators in so far as they have proceeded according to the local custom or rules of miners of the districts in which the mines are situated, yet in this case there is no evidence that these locations were made in conformity to any such local custom or rules. It is sufficient to say that by stipula-

tion of counsel it was agreed that the patents to the "Old Jordan" and Mountain Gem were issued upon the location notices. Inasmuch as they were accepted by the Government, and patents issued thereon it was a recognition by the department of the conformity of the proceedings to the local rules and customs of the district, and such ruling is not open to challenge by third parties claiming rights arising subsequently to such notices.

Summing up our conclusions, the findings of fact as stated in the opinion of the Court of Appeals are not clearly against the testimony, and must, therefore, be sustained. According to those findings there was a single broad vein—the apex or outcroppings of which extended through the limits of some of the plaintiff's and defendants' claims—and not several independent veins. The ore which was being mined and removed by the defendants was taken from this single broad vein beneath the surface ground of claims belonging to the plaintiff. Where there is a single broad vein whose apex or outcroppings extend into two adjoining mining claims the discoverer has an extralateral right to the entire vein on its dip. Acceptance by the Government of location proceedings had before the statute of 1866, and issue of a patent thereon, is evidence that those location proceedings were in accordance with the rules and customs of the local mining district. The priority of right to a single broad vein vested in the discoverer is not determined by the dates of the entries or patents of the respective claims, and priority of discovery may be shown by testimony other than the entries and patents. In the absence from the record of an adverse suit there is no presumption that anything was considered or determined except the question of the right to the surface.

From these conclusions it is obvious that the decision of the Circuit Court of Appeals was right, and it is

*Affirmed.*