BOURNE v. FEDERAL MINING & SMELTING CO.

(Circuit Court, D. Idaho, N. D. July 8, 1908.)

1. MINES AND MINERALS ⊜38(14)—EXTRALATERAL RIGHTS—PRESUMPTIONS AND BURDEN OF PROOF.

Prima facie the owner of a mining claim is the owner, not only of the surface, but of all beneath the surface, of its claims, and an adjoining owner, claiming the right to follow a lode on its dip under the surface of such claim, has the burden of proof, and must show by a preponderance of the evidence such a location of his claim as entitles him to follow the lode to and into the adjoining claim.

2. MINES AND MINERALS ⊜31(2)—EXTRALATERAL RIGHTS—LOCATION OF CLAIM.

Where a lode or vein apexing in plaintiff's claim crossed the southwesterly side line, plaintiff could not pursue the vein beyond the vertical plane of such side line, unless the apex intersected at least one of the end lines.

3. MINES AND MINERALS ⊜38(14)—EXTRALATERAL RIGHTS—PRESUMPTIONS AND BURDEN OF PROOF.

Where the apex of a mining vein or lode has been in part disclosed, and so far as known its course is parallel to the side line of the claim, it may be inferred that the strike of the hidden portion is substantially the same as that which has been exposed, but this is an inference of fact, and not a presumption of law, and does not follow from the location of the claim or the direction of the boundary line, but from the actual course of the apex of the disclosed portion of the vein.

4. MINES AND MINERALS ⊜38(14)—EXTRALATERAL RIGHTS—PRESUMPTIONS AND BURDEN OF PROOF.

Where a vein crossed the southwesterly side line of plaintiff's mining claim, and continued in an irregular and northerly course towards the corner at the intersection of the northwesterly end line and the northeasterly side line, being more nearly parallel with the end lines than with the side lines, no presumption could be indulged that it crossed the northwesterly end line, rather than the northeasterly side line.

5. MINES AND MINERALS ⊜38(18)—EXTRALATERAL RIGHTS—WEIGHT AND SUFFICIENCY OF EVIDENCE.

In such case, evidence *held* sufficient to require a finding that the apex of the vein intersected both side lines, and that plaintiff was therefore not entitled to pursue it on its dip beyond the vertical plane of the southwesterly side line.

In Equity. Suit by Jonathan Bourne, Junior, against the Federal Mining & Smelting Company. Decree for defendant.

Myron A. Folsom, of San Francisco, Cal., for complainant.

F. T. Post, of Spokane, Wash., and John P. Gray, of Cœur d' Alene, Idaho, for respondent.

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

DIETRICH, District Judge.  Complainant is the owner of the Ontario lode mining claim, situated in Shoshone county, and particularly described as follows:  Beginning at corner No. 1 (which is the westerly corner); then north $50°$ 33' east, 640 feet, to corner No. 2; thence south $67°$ 46½' east, 773.3 feet, to corner No. 3;  thence south $50°$ 33' west, 647 feet, to corner No. 4;  thence north $67°$ 19' west, 770 feet, to the place of beginning.  It will be noted that the boundary lines form acute angles at corners No. 1 and No. 3, and obtuse angles at corners No. 2 and No. 4;  that the claim is nearly as wide as it is long;  that corner No. 2 is the most northerly point of the claim;  and that the northwesterly and southeasterly boundary lines are parallel.  These, in the location of the claim, were deemed to be end lines.

It is alleged in the bill that the claim is located upon a lead and silver bearing lode or vein, the apex of which in its general course approximately parallels the side lines, and in passing out of the claim intersects the end lines, the dip being to the southwest.  The defendant is the owner of claims in the vicinity of and lying in a southwesterly direction from the Ontario.  The complainant asserts the right to follow his vein on its dip beyond the southwesterly side line of the Ontario, into and through the defendant's claims, at an indefinite distance beneath the surface thereof.  Such a right the defendant denies, and hence the controversy.

Before the case was finally submitted, many of the issues of fact presented by the pleadings were practically eliminated, and at the argument it was assumed that plaintiff was the owner of the Ontario claim, and that it embraced a segment of the apex of a vein or lode.  The vein is not highly or uniformly mineralized, and is of very irregular width or thickness.  Its persistent feature is a well-defined footwall.  Strictly speaking, it has no physical hanging wall, and for its upper boundary there is only the vague and irregular limit of mineralization.  Nowhere upon the claim does the vein outcrop, and from underground explorations, made about the time and after the suit was commenced, it was found that the apex does not cross the southeasterly end line, but that, followed upon its northerly course, it enters the claim by intersecting the southerly side line, almost at right angles, about 210 feet northwesterly from corner No. 4, and that it continues in an irregular, but northerly, course toward corner No. 2.

The crucial question is whether or not it intersects the northwesterly end line;  the contention of the plaintiff being that it crosses this line about 25 feet southwesterly from the corner, and of the defendant that it intersects the side line a few feet southeasterly from the corner.  Much of the evidence was directed to this issue, and about it substantially all of the argument clustered;  it being conceded that upon its determination the extralateral rights of the plaintiff depend.  Excavations of various descriptions were made at and near corner No. 2, both by the plaintiff and by the defendants, and the physical features thereby disclosed were, in great detail, reproduced in court by means of maps and models and samples of material, illuminated by the testimony of witnesses of scientific learning and of practical experience in mining.

Avoiding details, it may be said that by a raise on the footwall along the vertical plane of the northwesterly end line, the vein is unquestionably followed to a point approximately 30 feet below the surface and about 25 feet from corner No. 2. It is the theory of witnesses for the plaintiff that a faulting has taken place at this point, the extent of which cannot be determined, and that here the apex must be deemed to be. Upon the other hand, defendant's witnesses deny the existence of a fault, and assert that in the excavations made, pending the hearing, the continuity of the vein to the northeasterly side line, upon a dip somewhat flattened, is unmistakably demonstrated. There is no material change, they say, in the essential features of the vein; it is inclosed by rock in place, and the footwall here, as in other places, is regular and clearly defined. What plaintiff calls a fault they characterize as a mere crack or fracture, caused by the folding of the vein. They point to the fact that corner No. 2 is upon the crest or backbone of a ridge, and assert that the flattening of the vein, here found, is, under such conditions, a common phenomenon. The base of the ridge has, by erosion, been carried away, and the crest, losing its support, has settled; the crack being the axis of the fold.

[1] The plaintiff asserts an extraordinary right, not incident to ownership under the common law, but conferred by statute. He seeks to go outside of the boundaries of his own claim and penetrate the possessions of another. Prima facie, the defendant is the owner, not only of the surface, but of all beneath the surface, of its claims. This presumption that its ownership is exclusive is effective to repel intrusion by any one who does not come clothed with a title acquired by virtue of a compliance with the provisions of the statute. By this suit the plaintiff seeks constructively to enter beneath the surface of the defendant's claims and to take therefrom valuable deposits. Necessarily he assumes the burden of proof, and it is incumbent upon him to show, by a preponderance of the evidence, such a location of the Ontario claim as, under the law, entitles him to follow the lode, apexing therein, to and into the defendant's claims. Lawson v. U. S. Min. Co., 207 U. S. 1, 28 Sup. Ct. 15, 52 L. Ed. 65; St. Louis M. Co. v. Montana M. Co., 194 U. S. 235, 24 Sup. Ct. 654, 48 L. Ed. 953; Leadville M. Co. v. Fitzgerald, Fed. Cas. No. 8,158; Consolidated M. Co. v. Champion M. Co. (C. C.) 63 Fed. 540; Cheesman v. Shreeve (C. C.) 37 Fed. 36; Doe v. Waterloo M. Co. (C. C.) 54 Fed. 935; Parrott Silver & Copper Co. v. Heinze, 25 Mont. 139, 64 Pac. 326, 53 L. R. A. 491, 87 Am. St. Rep. 386; Grand Central M. Co. v. Mammoth M. Co., 29 Utah, 490, 83 Pac. 648.

[2] Admittedly, he cannot pursue the lode beyond the vertical plane of the southwesterly side line, unless the apex thereof intersects at least one of the end lines. Mining Company v. Tarbet, 98 U. S. 463, 25 L. Ed. 253; Del Monte M. Co. v. Last Chance M. Co., 171 U. S. 55, 18 Sup. Ct. 895, 43 L. Ed. 72.

[3] At the argument it was suggested by counsel for the plaintiff that a presumption should be indulged that the apex of the vein in a patented mining claim runs parallel with the side lines. In cases where the apex has in part been disclosed, and, so far as known, its course

is parallel to the side lines, it may be inferred that the strike of the hidden portion is substantially the same as that which has been exposed. In Carson City M. Co. v. North Star M. Co. (C. C.) 73 Fed. 597, Id., 83 Fed. 658, 28 C. C. A. 333, and 171 U. S. 687, 18 Sup. Ct. 940, Judge Beatty uses this language:

> "Generally, when a ledge has been traced for such a distance, in a claim of this size it would not be an unreasonable presumption that it would continue in the same direction far enough to cross the end lines of the claim."

In Montana M. Co. v. St. Louis M. & M. Co., 147 Fed. 897, 78 C. C. A. 33, Judge Hunt gave the following instruction:

> "If you find that the course or strike of the discovery vein in the St. Louis mining claim, as [it is] disclosed at the point of discovery or elsewhere, is generally lengthwise of the location, the presumption arises that the discovery vein so located extends through the entire length of such location."

But this is an inference of fact, and not a presumption of law. It follows, not from the location of the claim, or the directions of the boundary lines thereof, but from the actual course of the apex of a portion of the vein. To that extent, and that only, do the decisions go, and reason goes no further. If in this respect there was originally any doubt as to the views of the Supreme Court of Colorado, as expressed in Armstrong v. Lower, 6 Colo. 393, it is dispelled by the opinion upon rehearing (6 Colo. 586), and by the decision in Wakeman v. Norton, 24 Colo. 192, 49 Pac. 283.

[4] The principle, therefore, is that where a vein is found to have a certain course, so far as it is disclosed, the inference may be drawn that it will continue in the same direction. Hence, if it crosses an end line and for some distance the strike is parallel to the side lines, it is not unreasonable to conclude that it continues in that direction. But, if such a rule be applied to the conceded facts in this case, of what avail is it to the plaintiff? We start with the admission that in its course the vein enters the plaintiff's claim by intersecting, not an end line, but a side line. So far as it is definitely and indisputably determined, its course is more nearly parallel with the end lines than it is with the side lines. Hence, if any inference is to be drawn, it must be to the effect that the apex intersects the northeasterly side line rather than the northwesterly end line. But, in view of the entire situation, I doubt whether any presumptions can legitimately be indulged. Excluding from consideration the disclosures made by the excavations in the immediate vicinity of corner No. 2, there is no more reason to infer that the apex would pass out of the plaintiff's claim upon one side of corner No. 2 than there is to infer that it would pass out upon the other. The general course of the vein from the point where it enters the claim is in the direction of corner No. 2, and there is no substantial basis upon which an intelligent estimate of the probabilities can be made.

[5] Does the evidence, by preponderance, support the plaintiff's theory that the apex of the vein intersects the northwesterly end line near corner No. 2? Ten witnesses testify that it does; 12 testify that it does not. Assuming the competency and fairness of the witnesses for both parties to be the same, the numerical disparity is not

thought to be controlling. Upon such an issue, calling for expert opinion, manifestly either side might have lengthened the list of its witnesses. The number was representative, and one or two more or less should not be held to determine the preponderance of the evidence. Upon the whole, the relations of the witnesses to the parties was such that presumptively it may be said that the witnesses for the defendant were more interested in the result than those of the plaintiff; but, in consideration of the nature of the issue and the absence of any evidence of a disposition on the part of the witnesses upon either side to be unfair, I am not inclined to attach great importance to this feature of the case. No question is made of the honesty or integrity or general character of any of the witnesses. They do not differ widely concerning the evidentiary facts, and it is not strange that they should take different views of the significance of these facts and the scientific conclusions to be drawn therefrom.

The testimony is voluminous, and a detailed analysis of it would require much space, and could subserve no good purpose. It must suffice for me to say that, with the maps, models, and samples before me, I have read, with painstaking care, the entire record, and the impression I received therefrom is favorable to the defendant's theory, and I must therefore find as a fact that in its course the apex of the vein intersects both of the side lines. It follows that the plaintiff is not entitled to pursue the vein beyond the vertical plane of the southwesterly side line.

It appears that a portion of the Silver Casket, one of the claims owned by the defendant, is within the vertical planes of the side lines of the Ontario extended westerly in their own direction; but I have not the benefit of the views of counsel upon the question as to whether or not the decree, under the pleadings and upon the evidence, may properly adjudicate the extralateral rights of the plaintiff in this direction. Counsel for the plaintiff may prepare a decree, not out of harmony with the conclusions I have reached as to the course of the vein, and submit it to counsel for the defendant for approval. If there is any disagreement as to the form and scope of the decree, I will consider the propriety of a further hearing upon that point.