KEELY et al. v. OPHIR HILL CONSOL. MINING CO. et al.†

(Circuit Court of Appeals, Eighth Circuit. April 23, 1909.)

No. 2,858.

1. MINES AND MINERALS (§ 38*)—OWNERSHIP—PRESUMPTIONS.

While the presumption that an owner of the surface of a mining claim owns all minerals beneath it ceases when it is made to appear that some vein found beneath the surface has its apex in a claim belonging to another, yet the burden of proving ownership of such apex vein and its dip and descent to and underneath another claim so as to overcome the presumptive ownership of the surface owner is on him who asserts it.

[Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. § 38.*]

2. MINES AND MINERALS (§ 38*)—ADVERSE CLAIM—ACTION—JUDGMENT—EFFECT.

The Utah statute provides that an action may be brought by any person against another who claims an estate or interest in real property adverse to him to determine such adverse claim.. Held that, since it is only when a claim of an adverse estate or interest is made that the owner can avail himself of such remedy, a locator of a claim in a mining district, where there may be extralateral rights existing in favor of those owning contiguous or neighboring claims, cannot compel them in such an action to assert and make proof thereof, or be forever barred from claiming or asserting them, and hence a judgment in such an action is only conclusive as to the rights of the parties in the ownership of discovered veins.

[Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. § 38.*]

3. JUDGMENT (§ 948*)—RES JUDICATA—PLEADING.

Where an action at law to recover for ore mined by defendants from a certain mining claim and a suit in equity to quiet title to the claim both depended on whether defendants were entitled to mine a particular vein within the surface limits of plaintiffs' claim by virtue of defendants' extralateral rights, and both causes were instituted and disposed of nearly simultaneously, and its rendition of the judgment at law in favor of defendants, and its subsequent affirmance by the Circuit Court of Appeals having occurred after the final submission of the equity suit, such judgment was available as res judicata in the equity suit without being so pleaded.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1787; Dec. Dig. § 948.*]

4. APPEAL AND ERROR (§ 790*)—DISMISSAL—MOOT QUESTION.

Where an action at law and a suit in equity were instituted and submitted to the trial court nearly simultaneously and were based on the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Rehearing denied July 12, 1909.

same question, a determination of the action at law in favor of defendants, affirmed by the Circuit Court of Appeals, constituted ground for a dismissal of the appeal in the equity suit on the theory that it thereafter presented a mere moot question.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 47, 3132, 4383, 4384; Dec. Dig. § 790.*]

5. APPEAL AND ERROR (§ 712*)—MOOT QUESTION—FACTS OUTSIDE RECORD.

The Circuit Court of Appeals may take notice of facts appearing outside the record, which disclose the moot character of a question presented to it and decline for that reason to consider it.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 712.*]

Sanborn, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the District of Utah.

William H. Dickson (William C. Hall, A. C. Ellis, A. C. Ellis, Jr., and R. G. Schulder, on the brief), for appellants.

Edward B. Critchlow and John P. Gray (Henry P. Henderson, on the brief), for appellees.

Before SANBORN and ADAMS, Circuit Judges, and RINER, District Judge.

ADAMS, Circuit Judge. This was a suit in equity authorized by the provisions of section 3511 of the Revised Statutes of Utah of 1898 to quiet title to a mining claim owned by complainants situated in the Utah mining district and known as the "Henrietta Lode No. 87." This suit was instituted in the Circuit Court of the District of Utah simultaneously with an action at law brought in the same court, to recover for ore actually mined by defendants from the same claim. The action at law, according to the pleadings and stipulations of the parties, went to trial on the issue whether the ore mined was taken by defendants from veins which had their apex within certain claims belonging to the defendants located in near proximity to the Henrietta. The trial of the law action resulted on October 7, 1907, in a judgment on the merits in favor of the defendants, and necessarily determined that the veins from which the ore had been taken had their apex in defendants' claims, and therefore belonged to the defendants and not to the plaintiffs. On October 10th, following, the present cause was submitted to the court on the testimony taken in the action at law, and a decree was rendered dismissing the bill. The law case was brought here by writ of error, where the judgment has recently been affirmed. 169 Fed. 598. The present appeal was taken from the decree in the equity suit.

We are first confronted with a motion to dismiss the appeal on the ground that the controversy between the parties was fully and finally determined in the action at law, and that the present record presents only a moot case in which no effective relief can be granted. The defendants (appellees) contend that no question was tried or could have been tried in this suit other than what was tried in the action at law, namely, which of the parties was the owner of the particular veins which had been discovered underneath the Henrietta claim and

from which the ore had been mined? The complainants (appellants) contend that in this suit to quiet title it is competent to determine and settle for all time which party was the owner not only of the veins actually discovered and mined underneath the surface of the Henrietta, but also of all undiscovered and unknown minerals which might perchance lie vertically thereunder. If the defendants are right, there does not seem to be any doubt but what the judgment in the action at law concluded the question involved in this suit, because no other vein whatsoever had been discovered or worked underneath the Henrietta except the ones from which defendants had taken the ore which was the subject-matter of that action.

The bald question is therfore presented whether a locator of a claim in a mining district, where there may be extralateral rights existing in favor of others who own contiguous or neighboring claims, may compel all others who may have such extralateral rights to assert and make proof of them within the short time permitted by the rules and practice in equity or be thereafter forever barred from claiming or asserting them. It seems to us that the statement of this contention carries its own refutation. The nature of mining property is such that even if the apex of a vein, ledge, or lode should appear on the surface of a neighboring claim, and much more if one should exist but its existence be unknown, underneath the surface and within the vertical lines of the boundary of the claim extending downwardly, the owner of the claim, and therefore of that vein, might not be able to make proof of the dip and extension of his vein within any short time. It is a notorious fact that there is no way to prove the existence of a vein at any particular place except by actually following and developing a known vein to that place or digging into the bowels of the earth and locating it there. The value and property of a mining claim consist mainly of the developed and undeveloped minerals within it, and not merely of the surface of the claim. In fact the surface is ordinarily of no value except to facilitate the extraction of the minerals under or appertaining to it.

The statute of Utah upon which this suit was based reads as follows:

"Action to determine adverse claim. An action may be brought by any person against another who claims an estate or interest in real property adverse to him, for the purpose of determining such adverse claim."

It cannot escape notice that a present existing claim of some adverse right is an essential condition to the exercise of jurisdiction under this statute. Presumptively the owner of the surface of a mining claim owns all minerals beneath it. This presumption ceases when it is made to appear that some vein found underneath the surface has its apex in a claim belonging to another; but the ownership of this apex vein and its dip and descent to and underneath another claim so as to overcome the presumptive ownership of it in the owner of the surface is a matter of proof, the burden of which rests upon him who asserts it. Inasmuch as the enlarged remedy provided by the statute has been held applicable to mining claims (Lawson v. United States Min. Co., 207 U. S. 1, 28 Sup. Ct. 15, 52 L. Ed. 65), the contention is that the owner of such a claim may institute his suit, estab-

lish his ownership of the surface, and thereby cast the difficult and usually impossible burden upon the owners of adjoining claims, whom he may name as defendants, to make immediate proof of their rights, whether they know the facts conferring such rights or not, and practically to assert adverse claims to a thing before they know it exists.

It is only when a claim of an adverse estate or interest is made that the owner can avail himself of this remedy. If the owner's title to the surface of the mine as a whole is denied on the ground of alleged failure to take some steps essential to its acquisition, the owner might well resort to the statutory remedy and require all claimants to make good their adverse claims to such title or be forever barred from doing so. Here would be found a real and existing adverse claim, one which well falls within the remedial provisions of the statute; but whether a vein exists underneath the surface, or whether it so dips and reaches its apex within the body of a claim owned by another, is always purely conjectural until the facts are ascertained by discovery and development. One can know about and make a claim to the title of a mine, but it is not perceived how he can know about and make a claim to an undiscovered vein which oftentimes lies deep within the bowels of the earth.

The defendants, in the absence of a discovered and known vein emanating from their claims and extending under the Henrietta, cannot, in our opinion, be said to be asserting an adverse claim to the Henrietta mine within the true meaning of the Utah statute. There is no evidence that they were making any claim except to the veins which had been discovered and which formed the subject of the action at law. Obviously they could not make a claim until the facts should develop which under the law would give them a right. Their only right was a conditional and contingent one which they might assert, or might not, when the facts arose which would require them to take action.

No cases have been called to our attention, neither have we in our researches found any, which sustain complainants' contention in this regard. Incidentally, however, it may be stated that the cases of Boston, etc., Mining Co. v. Montana Ore Co., 188 U. S. 632, 23 Sup. Ct. 434, 47 L. Ed. 626, and United States Min. Co. v. Lawson, 67 C. C. A. 587, 134 Fed. 769, and Id., 207 U. S. 1, 28 Sup. Ct. 15, 52 L. Ed. 65, which concern the general subject now under consideration, disclose that the courts there undertook to quiet title to veins only which were being actually worked and actually claimed adversely by defendants, underneath the surface of complainants' claims. We conclude therefore that from the peculiar nature of mining property, and particularly of those rights known as "extralateral rights," no bill to quiet title lies to require possible claimants of such rights to assert them before they are known to exist. There being no such right involved in this case except the one adjudicated in the action at law, nothing appears to be left for the present bill to operate upon.

But it is said there is no plea of res adjudicata or estoppel by former judgment, and that therefore we cannot notice the defendants' present contention. Necessarily there is no such plea, as both causes

were instituted and disposed of nearly simultaneously. The rendition of the judgment in the action at law in the trial court and its subsequent affirmance in this court were events which occurred after the final submission of this cause to the trial court.

Nevertheless it is certain that the only issue now before us has been actually and finally adjudicated by a court of competent jurisdiction. The present record and the record in the action at law which has just been before us conclusively show this. Must we shut our eyes to these obvious facts and sagely proceed to an idle and bootless investigation and to a determination of a mere moot question? The forms of a judicial procedure are not so unyielding as to require us to do this vain thing. In the case of Mills v. Green, 159 U. S. 651, 16 Sup. Ct. 132, 40 L. Ed. 293, the Supreme Court passed upon a motion to dismiss an appeal because no actual controversy existed. It there said:

"The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it."

To the same effect are Washington Market Co. v. District of Columbia, 137 U. S. 62, 11 Sup. Ct. 4, 34 L. Ed. 572; Kimball v. Kimball, 174 U. S. 158, 19 Sup. Ct. 639, 43 L. Ed. 932; Tennessee v. Condon, 189 U. S. 64, 23 Sup. Ct. 579, 47 L. Ed. 709; In re James Lincoln, 202 U. S. 178, 26 Sup. Ct. 602, 50 L. Ed. 984; Faucher v. Grass, 60 Iowa, 505, 15 N. W. 302; Board of Freeholders v. Board of Freeholders, 44 N. J. Law, 438; Blythe Estate, 108 Cal. 350, 37 Pac. 392.

The court may take knowledge of facts appearing aliunde the record which disclose the moot character of a question presented to it and decline to enter upon its consideration. Cleveland v. Chamberlain, 1 Black, 419, 17 L. Ed. 93; Lord v. Veazie, 8 How. 251, 254, 12 L. Ed. 1067; Wood-Paper Co. v. Heft, 8 Wall. 333, 336, 19 L. Ed. 379; Dakota County v. Glidden, 113 U. S. 222, 5 Sup. Ct. 428, 28 L. Ed. 981; Butler v. Eaton, 141 U. S. 240, 11 Sup. Ct. 985, 35 L. Ed. 713; Kimball v. Kimball and In re James Lincoln, supra. In the Butler Case the Supreme Court had under examination a judgment rendered in the Circuit Court of the District of Massachusetts in favor of a stockholder of a national bank who had been sued for an unpaid subscription to capital stock. It appears that in the trial in the Circuit Court the defendant set up a judgment in her favor on substantially the same issue rendered by the Supreme Judicial Court of the state of Massachusetts as an estoppel. The judgment of the state court was brought to the Supreme Court for re-examination and resulted in a reversal. The same result also followed on the writ of error to the Circuit Court of the District of Massachusetts. The two cases appear to have been under consideration and to have been decided by the Supreme Court at the same time, and in disposing of the latter mentioned case the Supreme Court held that the Circuit Court committed no error in holding that the judgment of the state court as it stood at the time of the trial constituted an estoppel, and said:

"It cannot be said therefore, looking to the record in this case alone, that there is error in the judgment now before us; but by our own judgment just

rendered in the other case, the whole basis and foundation of the defense in the present case, namely, the judgment of the Supreme Judicial Court of Massachusetts, is subverted and rendered null and void for the purpose of any such defense. * * * The judgment complained of is based directly upon the judgment of the Supreme Judicial Court of Massachusetts, which we have just reversed. It is apparent from an inspection of the record that the whole foundation of that part of the judgment which is in favor of the defendant is, to our judicial knowledge, without any validity, force, or effect, and ought never to have existed. Why, then, should not we reverse the judgment which we know of record has become erroneous, and save the parties the delay and expense of taking ulterior proceedings in the court below to effect the same object? Upon full consideration of the matter, we have come to the conclusion that we may dispose of the case here."

In the Kimball Case the Supreme Court said:

"From the necessity of the case, this court is compelled, as all other courts are, to allow facts which affect its rights and its duty to proceed in the exercise of its appellate jurisdiction, but which do not appear upon the record before it, to be proved by extrinsic evidence."

In the Lincoln Case the Supreme Court, after adverting to several other cases, said:

"In each of which, intermediate the ruling below and the time for decision here, events had happened which prevented the granting of the relief sought, and the appeals or writs of error were dismissed on the ground that this court did not spend its time deciding a moot case."

From our own records we are advised that the ownership of the only discovered veins in the Henrietta claim has been finally and conclusively adjudged to be in the defendant. By reason thereof any decree we might now render in favor of complainant could not be carried into effect. We must therefore decline to entertain this appeal.

In view of the conclusions already reached and stated, it appears that the only subject-matter of this suit were the veins of ore which had been discovered in the Henrietta claim and which were being worked at the time this suit was brought. It follows that the decree rendered herein is referable only to those veins and cannot stand in the way of another bill to quiet title to any vein which may hereafter be discovered if complainants desire to avail themselves of such a remedy.

The motion to dismiss the appeal must be sustained, and it is so ordered.

SANBORN, Circuit Judge, dissents.