## COBBAN et al. v. CONKLIN.

(Circuit Court of Appeals, Ninth Circuit. October 6, 1913.)

### No. 2,236.

1. EQUITY (§ 53*) — EQUITY JURISDICTION — ADEQUATE REMEDY AT LAW — WAIVER OF OBJECTION.

   While under Rev. St. § 723 (U. S. Comp. St. 1901, p. 583), a suit in equity cannot be maintained in a federal court in any case where a plain, complete, and adequate remedy may be had at law, the provision is mainly to secure to the defendant the privilege of a trial by jury, and this he may waive. If in a suit in equity he answers and submits to the jurisdiction of the court, he cannot thereafter object that the plaintiff has a plain and adequate remedy at law, provided the subject-matter of the suit is of a class over which a court of chancery has jurisdiction, and it is competent for the court to grant the relief sought.

   [Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 173–176; Dec. Dig. § 53.*]

2. CANCELLATION OF INSTRUMENTS (§ 43*)—DECREE—CONFORMITY TO BILL AND PROOF.

   A bill to set aside conveyances on the ground of fraud *held* to sustain a decree granting the relief prayed for, although the fraud and conspiracy charged against the defendants was not proved where they obtained their title through the fraud of another, which was also charged.

   [Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. §§ 96–99; Dec. Dig. § 43.*]

3. DEEDS (§ 54*)—DELIVERY—OBTAINING POSSESSION WITHOUT CONSENT OF GRANTOR.

   An instrument of conveyance never delivered but of which possession was obtained without the knowledge or consent of the grantor does not divest the grantor's title.

   [Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 112–125; Dec. Dig. § 54.*]

4. PRINCIPAL AND AGENT (§ 10*)—CREATION OF AGENCY—INSTRUMENT VOID FOR NONDELIVERY.

   A power of attorney to convey land which was never delivered by the grantor but was obtained from her possession without her knowledge or consent was void, and a deed from the donee conveyed no title, although the purchaser bought in good faith.

   [Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 19–23; Dec. Dig. § 10.*]

5. ESCROWS (§ 14*)—UNAUTHORIZED DELIVERY BY DEPOSITARY.

   The unauthorized delivery of an instrument of conveyance held in escrow conveys no title even in favor of an innocent purchaser without notice.

   [Ed. Note.—For other cases, see Escrows, Cent. Dig. §§ 17–20; Dec. Dig. § 14.*]

Appeal from the District Court of the United States for the Southern Division of the District of Idaho; Frank S. Dietrich, Judge.

Suit in equity by Mollie Conklin against R. M. Cobban, E. B. Weirick, individually and also as trustee, and the Payette Lumber & Manufacturing Company. Decree for complainant, and defendants appeal. Affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

For opinion below, see 198 Fed. 881.

On September 7, 1905, the appellee brought a suit for the cancellation of certain deeds and powers of attorney which she alleged to be fraudulent and forged and which constituted a cloud upon her title to 3,723 acres of timber lands in Boise county, Idaho. The appellant the Payette Lumber & Manufacturing Company held the record title to the lands by a warranty deed executed on May 19, 1903, from the appellant E. B. Weirick, trustee, and Weirick deraigned title through warranty deeds made in September, 1901, purporting to be executed by the appellee by the appellant Cobban as her attorney in fact. The court below found upon the evidence that the allegations of fraud and conspiracy charged against the appellants were not sustained but held that the conveyances by Cobban as attorney in fact of the appellee were unauthorized and void, and a decree was entered canceling the powers of attorney under which Cobban made the conveyances and canceling the deeds made thereunder and adjudging that the Payette Lumber & Manufacturing Company, which had purchased without actual notice of any infirmity or defect in the conveyances, was entitled to a conveyance from the appellee, upon payment to her of $10,130.38, with interest, but that upon failure to make such payment the title be quieted in the appellee.

The facts disclosed in the record are in brief that in 1900 the appellee owned an undivided one-half interest in 9,600 acres of lands in Inyo and Tulare counties, in the state of California, known in the record as the Monache lands; the other half interest being owned by the estate of Patrick Reddy, deceased. Joseph C. Campbell, of the firm of Campbell, Metson & Campbell, was the attorney for the Reddy estate, and he had previously been the attorney for the Conklin estate, through which the appellee derived her interest in the Monache lands. Mr. Campbell was also attorney for John A. Benson, who in that year entered into negotiations for the purchase of the Monache lands. The lands had been included within the Sierra Forest Reserve. The owners of such lands were authorized by law to exchange them for other public lands which were subject to settlement. To make the exchange, the owners were required to execute deeds conveying to the United States their lands in the reservation, to have the deeds recorded in the proper county recorder's office, and thereafter to file in the Land Office the deeds, together with abstracts showing a clear and unincumbered title in the United States, and applications to select other public lands specifically described, and of equal acreage, in lieu of the deeded lands. The appellee, her son, W. E. Conklin, Benson, and Mr. Campbell had a conference with reference to the sale of those lands, at which a verbal agreement was made, all the terms of which are not definitely or positively shown by the evidence but for one thing: It was agreed that the lands should be sold to Benson at the price of $3.80 net per acre. The appellee testified that deeds for the lands were to be executed and placed in escrow and were not to be taken out until the money was paid by Benson, which was to be within 90 days. In this she was corroborated by the testimony of her son. Mr. Campbell testified that the land was to be conveyed to the United States, and that the payment of $3.80 net per acre was to be made through the Anglo-California Bank, upon approval of the lieu selections by the Land Department, and that the titles to the lieu lands were to be approved in the name of the appellee and the Reddy estate; that when so approved Benson would have the right to purchase the same at $3.80 per acre, but that the title was not to pass out of either the Reddy estate or the appellee until the lands were paid for; and that nothing was said about any powers of attorney to sell the lieu lands. Benson testified that it was agreed that powers of attorney should be executed to sell the lieu lands, but his testimony was contradicted by the testimony of all the other persons who were present at the making of the contract, and it was not credited by the court below. It is admitted that Benson was to prepare the necessary deeds which were to be submitted for signature to the appellee through Mr. Campbell. Benson thereafter prepared the papers and sent them from time to time to Mr. Campbell's office to be executed by the representatives of the Reddy estate and the appellee. A messenger

from Mr. Campbell's office took them to the residence of the parties who were to sign them. It appears that the appellee examined a few of the papers and, finding them correct, executed all thereof, relying upon the fact that they had come through Mr. Campbell's office. Among the papers so executed were not only conveyances of the Monache lands to the United States but powers of attorney in blank to convey in the name of the grantors the lieu lands that were or might be selected in exchange therefor. The papers when executed were returned to Mr. Campbell's office, and from there Benson in some way obtained possession of them.

Prior to February 19, 1901, a syndicate had been formed of certain persons in Montana to purchase public lands by the use of lieu land scrip. The appellant Cobban was a member of the syndicate, and he acted for the others in purchasing such scrip. The agreement was that after the approval of the selections the lands acquired were to be conveyed to Weirick, as trustee, for the use and benefit of the members of the syndicate. Cobban purchased from Benson the scrip which represented the right of the owners of the Monache lands to make lieu selections. Benson would forward the scrip to a bank with a sight draft attached, and upon the payment thereof there were delivered to Cobban the deeds surrendering the base lands to the United States, the abstracts of title therefor, applications to select lieu lands, powers of attorney to select lieu lands, and irrevocable powers of attorney to convey the same. But all these papers except the original deeds were blank as to the description of the lands to be selected and to be conveyed, and the powers of attorney were blank as to the name of the attorney to whom power was given to select lieu lands and to convey the same. Cobban admitted that he had no dealing with the appellee, that he was never authorized by her to insert his name in any of said powers of attorney, and that Benson never exhibited any authority to him to insert his (Cobban's) name in any of said powers; but he testified that, having received the papers in blank, he assumed the right to insert such things as were necessary to enable him to select and convey lieu lands. The selections of land involved in the present suit were approved by the United States, and the lands were patented in the name of the appellee and in those of the administratrix and the administrator of the Reddy estate, and the same lands were afterwards conveyed by Cobban, as attorney in fact for the patentees, to Weirick, as trustee. Thereafter Weirick and Cobban, acting for the syndicate, gave an option on the lands, which was assigned to the appellant the Payette Lumber & Manufacturing Company, and on May 19, 1903, the lands were conveyed to that company. The appellee was paid by Benson through the office of her attorneys at law $2,750 on account of the conveyance of the Monache land, leaving a large sum due and unpaid, which Benson received from the appellants and appropriated to his own use. In December, 1901, the appellee, having become suspicious of Benson, caused some investigation of the records to be made and found that the Monache lands had been conveyed to the United States by deeds which were of record, and she learned in July, 1902, that powers of attorney were in existence, and her first knowledge that powers of attorney purporting to have been executed by her had been used in Idaho was acquired in October, 1903. She thereupon filed in the office of the county recorder of Boise county, Idaho, a general revocation of all powers of attorney. That revocation was recorded more than five months prior to the execution of the deed to the Payette Lumber & Manufacturing Company.

Richards & Haga and McKeen F. Morrow, all of Boise, Idaho, for appellants.

N. E. Conklin, of Berkeley, Cal., and Wm. B. Davidson, of Boise, Idaho, for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] The contention is made that the court below was without jurisdiction

of the cause of suit for the reason that the suit is brought to remove a cloud from title, and that such a suit may be maintained in a federal court only when the plaintiff is in possession, or the land is vacant and unoccupied, for the reason that otherwise the plaintiff has an adequate remedy at law, citing Whitehead v. Shattuck, 138 U. S. 146, 11 Sup. Ct. 276, 34 L. Ed. 873, and Lawson v. United States, 207 U. S. 1, 28 Sup. Ct. 15, 52 L. Ed. 65. The rule so invoked was well established before it was expressed in section 723 of the Revised Statutes (U. S. Comp. St. 1901, p. 583), which provides that suits in equity shall not be maintained in either of the courts of the United States in any case where a plain, complete, and adequate remedy at law may be had. Referring to the provisions of that section, Mr. Justice Brown said:

"These provisions are obligatory at all times and under all circumstances and are applicable to every form of action, the laws of the several states to the contrary notwithstanding." Wehrman v. Conklin, 155 U. S. 314, 15 Sup. Ct. 129, 39 L. Ed. 167.

But the rule was devised and the statute was enacted mainly to secure to the defendant the privilege of a trial by jury, and this he may waive. If in a suit in equity he answers and submits to the jurisdiction of the court, he cannot thereafter object that the plaintiff has a plain, complete, and adequate remedy at law, provided that the subject-matter of the suit is of a class over which a court of chancery has jurisdiction, and it is competent for the court to grant the relief sought. Reynes v. Dumont, 130 U. S. 354–395, 9 Sup. Ct. 486, 32 L. Ed. 934; Kilbourn v. Sunderland, 130 U. S. 505, 9 Sup. Ct. 594, 32 L. Ed. 1005; Wylie v. Coxe, 15 How. 415, 14 L. Ed. 753; Tyler v. Savage, 143 U. S. 79, 97, 12 Sup. Ct. 340, 36 L. Ed. 82; Southern Pacific Co. v. United States, 200 U. S. 341, 26 Sup. Ct. 296, 50 L. Ed. 507; Hapgood v. Berry, 157 Fed. 807, 85 C. C. A. 171.

In Reynes v. Dumont the court quoted the rule as stated in Daniell's Chancery Practice that:

"If a defendant in a suit in equity answers and submits to the jurisdiction of the court, it is too late for him to object that the plaintiff has a plain and adequate remedy at law. This objection should be taken at the earliest opportunity. The above rule must be taken with the qualification that it is competent for the court to grant the relief sought, and that it has jurisdiction of the subject-matter."

In Wylie v. Coxe the court said:

"The want of jurisdiction, if relied on by the defendant, should have been alleged by plea or answer. It is too late to raise such an objection on the hearing in the appellate court, unless the want of jurisdiction is apparent on the face of the bill."

The equitable jurisdiction to remove clouds from title to real estate is old and well settled. The bill in the case at bar contained all the essential averments to show jurisdiction of such a cause of suit. It alleged that the title was in the appellee, and that the lands were not in the possession of either of the parties to the suit, but were vacant, unoccupied timber lands in the possession of no one. The answer admitted that the lands were wild and uncultivated timber lands but alleged that they were in the possession of the Payette Lumber &

Manufacturing Company. No evidence whatever was taken on the subject of the possession. The appellants point to the language of the opinion of the court below in which it was said that it was "not improbable that expenses aggregating considerable amounts had been incurred * * * in caring for the timber growing thereon and in paying taxes and other charges"; and they argue that this indicates that they were in possession. But nothing can be asserted upon a mere conjecture of the court, unsupported by evidence. For aught that the record shows to the contrary, it was true, as alleged in the bill, that neither party to the controversy was in possession of the lands. However that may be, the controlling facts are that the appellants answered the bill on the merits and made no objection thereto on the ground that the appellee had an adequate remedy at law, and now present that objection for the first time in this court on the appeal. It is clear that it comes too late.

[2] The appellants contend that the court below erred in that it awarded relief which was not authorized by the allegations of the bill, that the gravamen of the bill was fraud and conspiracy between the appellants, but that the relief afforded was based upon the finding that the insertion of the names of attorneys in the powers of attorney by Cobban was unauthorized and void; and they invoke the rule that the decree cannot go beyond the scope of the bill, that it is not enough that the proof show that the complainant is entitled to some relief, but that it must show that he is entitled to relief which is predicable upon the allegations of his bill, and that this is especially true in cases where the charge is fraud. We may concede the doctrine, which is contended for, that the relief must be founded upon and consistent with the facts set up in the bill or with some theory of the case on which the bill is based, and that a bill to set aside a conveyance on the ground of fraud will not sustain a decree granting such relief on an entirely distinct ground of equitable jurisdiction, such, for instance, as mistake. Hendryx v. Perkins, 52 C. C. A. 435, 116 Fed. 1020; McKinney v. Big Horn Basin Dev. Co., 93 C. C. A. 258, 167 Fed. 770; Eyre et al. v. Potter et al., 15 How. 41, 14 L. Ed. 592; Burk v. Johnson, 76 C. C. A. 567, 146 Fed. 209. In Price v. Berrington, 7 Eng. Law & Eq. 260, Lord Truro said:

"When the bill sets up a case of actual fraud and makes that the ground of the prayer for relief, the plaintiff is not entitled to a decree by establishing some one or more of the facts, quite independent of fraud, but which might of themselves create a case under a totally distinct head of equity from that which would be applicable to the case of fraud originally stated."

But we think that the appellants' contention involves a misconception of the case which is made by the bill. While the bill charges fraud, it cannot be said that the decree is not based upon fraud. It is true that not all the allegations of fraud are sustained by the proof, and that the court found that the charge of conspiracy and fraud which was made against Cobban, Weirick, and the Payette Lumber Company was not justified by the evidence. But the fraud of Benson was proven, and it was the proof of his fraud which justified the decree. Benson fraudulently procured the execution of powers of attorney in

blank and fraudulently procured the possession thereof after their execution. There is no evidence that the appellee knowingly and intentionally executed those papers or placed them in Benson's hands under such circumstances as to charge her with knowledge of his purpose to use them as he did. If such had been the case, she would have no standing in a court of equity to complain of Cobban's act of inserting names and descriptions in the blanks. But the findings of the lower court, while they fall short of sustaining all the charges of fraud, found fraud sufficient whereon to rest the decree. It was not necessary that the defendants should have participated in Benson's fraud. It was enough that they derived their title through it. The decree, therefore, is not inconsistent with the frame and theory of the bill, and it does not rest on a ground entirely distinct from that which the bill presents.

[3] It is urged that the appellee, having intrusted Benson with the papers, gave him the power to make a perfect record title in any purchaser, and that the appellant Payette Lumber & Manufacturing Company purchased the lands in good faith for value, and without notice, and took the legal title wholly discharged from the claims and equities of the appellee. The evidence is that the appellee, while she signed the papers which were placed before her, never acknowledged the execution of any of them, and that the certificates of acknowledgment were attached thereafter, when they came into the possession of Benson, and that she signed them relying on the fact that they came from the office of Campbell, Metson & Campbell, and without examining them or understanding their contents, but supposing them all to be the deeds which the contract contemplated. If, however, she is to be charged with knowledge of the contents of papers to which she appended her signature, the fact remains that she never in any way delivered or authorized or consented to the delivery of the powers of attorney to Benson. J. C. Campbell testified that he did not deliver them to Benson and did not authorize their delivery, and that he did not know of their existence, and that there was no agreement at any time that the title was to pass until the lands were paid for through the Anglo-California Bank. It is the general rule that the delivery of a deed with the consent of the grantor is essential to pass title, and that an instrument of conveyance never delivered but obtained without the knowledge or consent of the grantor does not divest the grantor's title. Henry et al. v. Carson, 96 Ind. 412; Allen v. Ayer, 26 Or. 589, 39 Pac. 1; Steffian v. Bank, 69 Tex. 513, 6 S. W. 823; Tisher v. Beckwith, 30 Wis. 55, 11 Am. Rep. 546; Bowers v. Cottrell, 15 Idaho, 221, 96 Pac. 936.

[4] There having been no delivery, therefore, to Benson, the rules respecting a purchaser in good faith do not protect the Payette Lumber & Manufacturing Company, for the good faith of the purchaser cannot create a title where his grantor has none, and nothing can be founded upon a deed which is absolutely void. Sampeyreac v. United States, 7 Pet. 222, 241, 8 L. Ed. 665; Lindblom v. Rocks, 77 C. C. A. 36, 146 Fed. 660; Texas Lumber Mfg. Co. v. Branch, 8 C. C. A. 562, 60 Fed. 201. The case stands upon ground entirely distinct from those

cases in which execution and delivery have been procured by fraud so that the conveyance is voidable only, and the fraud cannot be alleged to defeat the right of a purchaser in good faith who pays value without notice and who thus brings himself within the protection of the general equity principle that, wherever one of two innocent persons suffers loss on account of the wrongful act of a third, he who has enabled the third person to occasion the loss must be the person to suffer.

[5] Again, the court below reached the conclusion from the evidence, correctly, we think, that by the terms of the contract the papers after their execution were to be deposited by J. C. Campbell in escrow with the Anglo-California Bank, with instructions to deliver them to Benson only upon the receipt of the stipulated purchase money, and that Campbell, having failed to deposit them in escrow, must be deemed to have retained them in the capacity of an escrow depositary. If so, the subsequent delivery of them was ineffectual to convey title, for it is the general rule that the unauthorized delivery of an instrument of conveyance held in escrow conveys no title, even in favor of an innocent purchaser without notice. 16 Cyc. 581; Provident Trust Co. v. Mercer County, 170 U. S. 593, 18 Sup. Ct. 788, 42 L. Ed. 1156; Balfour v. Hopkins, 93 Fed. 564, 35 C. C. A. 445; Fearing v. Clark, 16 Gray (Mass.) 74, 77 Am. Dec. 394; Tyler v. Cate, 29 Or. 515, 45 Pac. 800; Bradford v. Durham, 54 Or. 1, 101 Pac. 897, 135 Am. St. Rep. 807.

The decree is affirmed.