ENNIS-BROWN CO. v. CENTRAL PAC. RY. CO. et al.
(and fifteen other cases.)

(Circuit Court of Appeals, Ninth Circuit. August 14, 1916.)

No. 2729.

QUIETING TITLE ⊙=13—JURISDICTION OF EQUITY—ADEQUATE REMEDY AT LAW.

A bill which alleges that complainant is the owner of a tract of land, and that defendant, a railroad company, is in the exclusive possession of the entire tract, and admits that defendant has been for 50 years using the same for railroad purposes, does not state a cause of action in equity to quiet title, although it further alleges that the use of the entire tract is not necessary to the operation of defendant's railroad; complainant's remedy being limited to an action of law for damages.

[Ed. Note.—For other cases, see Quieting Title, Dec. Dig. ⊙=13.]

Gilbert, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Second Division of the Northern District of California; Wm. C. Van Fleet, Judge.

Suit in equity by the Ennis-Brown Company against the Central Pacific Railway Company and the Southern Pacific Company, with fifteen other cases. Decrees for defendants, and complainant appeals. Affirmed.

For opinion below, see 228 Fed. 46.

The suit above entitled and fifteen other similar suits consolidated with it were instituted for the purpose of quieting the alleged title of the appellant to certain lands in the city of Sacramento, Cal., lying between the west line of Front street and the Sacramento river, and for an injunction against the assertion of any adverse interest therein by the appellees, and for general relief. Omitting the jurisdictional averments and description of the property, the facts set up in each of the original bills of complaint are in substance these: That the complainant "is, and at all the times mentioned herein was, the owner in fee simple" of the property described, and "that the defendants and each of them claim an estate or interest in said property adverse to the complainant, which claim is without right," and "defendants have not, nor has either of them, any estate, title, right, or interest in or to the property or any portion thereof; that the defendant Central Pacific Railway Company is not in possession of the premises involved or any part thereof."

The answers of the defendants to the original bills set up similar defenses to each of the suits, denying in substance any title or interest in the com-

plainant, and setting up a fee-simple title to the property in question in the Central Pacific Railway Company, and a lease of the property by that company to the Southern Pacific Company. The answers further allege that the Central Pacific Railway Company is not in actual possession of any part of the premises, but that it is in possession thereof through the defendant Southern Pacific Company by lease and agreement made by the predecessor in interest of the Central Pacific Railway Company to the said Southern Pacific Company, and that the said Central Pacific Railway Company claims to be the owner in fee simple absolute of the said property, subject to the possession of the said Southern Pacific Company under said lease and agreement, and that the said Central Pacific Railway Company "has acquired title to said real property from all persons of every kind and description who have at any time had any right, title, claim, or interest in and to said property or any part thereof." The answers also pleaded the various statutes of limitation and further alleged:

"That the said Central Pacific Railroad Company of California and its successors in interest, ever since 1863, have, and the said defendants, as such successors, do now maintain, upon said property, valuable and extensive railroad works and improvements and railroad tracks, and that now, and for many years last past, the said railroad works and improvements have, and do now, constitute a part of the railroad system of the said Central Pacific Railway Company, which runs from Ogden, in the state of Utah, through portions of the state of Utah, and through the state of Nevada, and through portions of the state of California, and over and through the property described in the complaint, and connected up by tracks with other property of other railroad corporations, and that ever since 1863 the said railroad tracks, works, and improvements on the said real property described in the complaint have been, and now are, used and employed by the said defendants and their predecessors in interest, in interstate commerce, as well as intrastate commerce, by virtue of the fact that the said Central Pacific Railway Company, and its predecessors in interest, and the said Southern Pacific Company have been, and now are, common carriers of freight and persons for hire. That ever since 1863 vast and large sums of money have been expended by the said defendants and their predecessors in interest in constructing, maintaining, and operating buildings and structures upon the said property as a part of the said system. That a part of the said property is covered by the railroad freight sheds of the said defendants, and the balance of said property by railroad tracks and other improvements of the said defendants, all of which has been, during the said period of time, and now are, devoted to public use. That the said complainant, and its predecessors in interest, have stood by and permitted the said defendants, and their predecessors in interest, to expend large sums of money in the construction, maintenance, and operation of the said improvements and railroad works and tracks, with the knowledge of the said defendants and their predecessors in interest claiming to own the said lands in fee simple absolute, and have never made any claim to the said defendants, or either of them, until the commencement of the present action, that the said complainant, or its predecessors in interest, ever claimed any right, title, claim, or interest in and to the said lands, or any part thereof. That the said complainant and its predecessors in interest have expressly and impliedly acquiesced in and consented to the entry of the said defendants and their predecessors in interest upon the lands described in the complaint, and in the construction, operation, and maintenance of the said railroad works and improvements and structures hereinbefore referred to, and for more than 50 years last past have never made any objection or hinderance thereto. That the railroad tracks over and through the lands described in the complaint are used, and have been for many years last past used, by the said defendants for the construction, operation, and maintenance of the main line tracks, which connect and have connected the city of Sacramento with the said railroad system and with other places in the state of California, and with cities and towns in other states of the United States. That the said property contains, and has for many years contained, other tracks, which are used, and are now being used, for switching and terminal purposes in the reception and delivery

of freight in connection with the said railroad system, and along the east side of the said property described in the complaint, together with property adjoining the same on the north and south, there is now, and has been, constructed and maintained by the said defendant, and their predecessors in interest, a large structure, known as the Sacramento freight sheds of the said defendants, and to the west thereof, during said time, have been located, and are now located, the tracks leading to and from the said freight sheds, as well as the main line tracks, and to the west thereof, and bordering upon the Sacramento river, there have been, and during all of said time have been, maintained and operated by the said defendants, and their predecessors in interest, wharves used by the said defendants and their predecessors in interest in connection with the said railroad system, and as means of receiving and discharging freight to and from steamers, which constitute, and for many years last past has constituted, a part of the system of the said defendants in connection with the said railroad system. The said steamers, during all of said time, have and do now ply upon the Sacramento river in carrying freight to and from the city of Sacramento, and which is handled by the said defendants as a part of its railroad system, also as a part of its steamer system. That if the said complainant succeeds in establishing title to the said lands described in the complaint, or any part thereof, and obtains possession thereof, the railroad system of the said defendants, as well as the steamer system of the said defendants, will be interfered with and broken, and the said defendants prevented from carrying freight and passengers to and from the city of Sacramento to other points within the state of California, and to and from other states, and thereby great and irreparable public loss will be sustained. That for more than 50 years last past the said complainant and its predecessors in interest have stood silently by and permitted the system of the said defendants and its predecessors in interest to grow and expand, and the property described in the complaint to be used as a part of the said system, and large sums of money to be expended by the said defendants upon the faith thereof, and never, at any time, objected to the right of the said defendants and their predecessors in interest to use the said property, as a part of its railroad and steamer system, but at all times consented and acquiesced in and to the use of the same by the said defendants and their predecessors in interest. Defendants therefore aver, in equity and good conscience, that the said complainant is now estopped to claim any right, title, claim, or interest in and to the property described in the complaint, or any part thereof. That the alleged cause of action in equity of said complainant is barred by its laches, and the laches of its predecessors in interest. That the alleged cause of action is stale and presents no equity. That the said complainant does not come into equity with clean hands. That, prior to the commencement of the present action in equity, complainant, or its predecessors in interest, have never asserted any claim or title to the lands described in the complaint, or any part of such lands. That if the said complainant, or its predecessors, ever had any interest or estate in and to said property, the said defendants and their predecessors in interest could have acquired the same by law of the eminent domain, under the laws of the state of California, as each of the same is, and has been, ever since its organization, a steam railroad corporation, engaged in the business of a common carrier of persons and freight for hire. That all of the lands described in the complaint are necessary to the said public use in charge of the said defendants."

On March 1, 1915, the suits were set for trial at Sacramento May 25th. On May 24, 1915, the defendants moved the court to transfer the suits to the law side of the court, on the ground that it appeared that the complainant had a plain, adequate, and complete remedy at law, which motion the court granted unless complainant should amend the bills within 10 days. Within that time it did file amended bills in all respects similar to the original ones, but with the following additional averments:

"The defendants Southern Pacific Company and Central Pacific Railway Company are, and each of them is, engaged in the general business of railroad corporations as common carriers of passengers and freight, and said Southern Pacific Company maintains upon and over a portion of the property described in the amended bill filed herein a railroad main track over and

upon which it operates trains in the exercise of its said business. To prevent the maintenance and operations of said railroad track would interfere with the service of said defendant Southern Pacific Company to the general public in the city of Sacramento and in the county of Sacramento, and elsewhere. On other portions of said property said Southern Pacific Company maintains other railroad tracks, which are switching tracks, and a large structure known as the Sacramento freight sheds, and sheds used as a wharf bordering upon the Sacramento river. The public interest neither of the inhabitants of the city of Sacramento nor or [of] the county of Sacramento, nor of any other community requires the maintenance of [or] continuance of said last-mentioned tracks or said sheds by said Southern Pacific Company. All of said tracks herein mentioned and sheds are used exclusively by the defendant Southern Pacific Company, and said company claims that as a public service corporation it is entitled to the continuous and exclusive use of said tracks, sheds, and the land upon which the same are situated. The four most important business streets in the city of Sacramento running toward the Sacramento river are I, J, K, and L streets; that said land is situated near the foot of said streets, borders upon the Sacramento river, and, together with the land adjacent thereto is the most convenient point for the shipment of freight into and from the city of Sacramento; that the commerce of the city of Sacramento by water is approximately one-half of the commerce of said city; that the public interest of the citizens of the city of Sacramento and of the county of Sacramento and thereabouts requires that said property should not be used exclusively by said defendant Southern Pacific Company; that the use of said property by said Southern Pacific Company is subordinate to the requirement of public interest; that the land upon which said sheds are built should be open to use by others than said defendant, Southern Pacific Company, and to the title and rights of the complainant therein and thereto." The prayer of the bill was that the defendants be required to set out the source and nature of their respective claims, and that they be adjudged without right and of no force and effect, and that the defendants and each of them be perpetually enjoined from asserting any interest in the property, and for such other and further relief as the equities of the case should require, and for costs.

Thereupon the defendants moved the court to dismiss each of the bills as so amended upon various grounds stated, some of which grounds were sustained by the trial court, and an order entered allowing the complainant 10 days within which to further amend, which leave being refused, judgments were entered dismissing the bills as amended. The case is brought here by complainant by appeal.

Burrell G. White, of San Francisco, Cal., for appellant.

E. J. Foulds, of San Francisco, Cal., and William H. Devlin and Devlin & Devlin, all of Sacramento, Cal. (Edward Elliott and Roy S. Bartlett, both of San Francisco, Cal., of counsel), for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge (after stating the facts as above). It will be readily seen that, while the bills allege that the defendant companies are "engaged in the general business of railroad corporations as common carriers of passengers and freight," and that the defendant Southern Pacific Company is, in the conduct of such business, in the exclusive possession of the property described in the bills, and that the defendant Central Pacific Railway Company "is not in possession of" it, they make no reference to the fact, alleged in the answer of the defendants to the original bills, that the Southern Pacific Company entered into the actual possession of the property about 50 years before the bringing of the suits under a lease from the pred-

ecessor in interest of the Central Pacific Railway Company, and has ever since held the same under such lease; and while the bills as amended allege the public character of the business of the Southern Pacific Company and the exclusive possession of that company of the property in question in the carrying on of such business, they do not allege that the complainant had any interest therein at the time that company took possession of the land in the carrying on of its business of common carrier of passengers and freight.

Now, what is the necessary result of all of this? If it be conceded that the Southern Pacific Company took possession of the property without any right whatever, and built its railroad tracks, sheds, and other structures in the prosecution of its business as common carrier, the law is well settled that the owner of the land, remaining inactive and permitting such expenditures, "will be estopped from maintaining either trespass or ejectment for the entry, and will be regarded as having acquiesced therein, and be restricted to a suit for damages." Roberts v. Northern Pacific Railroad, 158 U. S. 1, 11, 15 Sup. Ct. 756, 758 (39 L. Ed. 873); Kindred v. Union Pacific Railroad Co., 225 U. S. 582, 32 Sup. Ct. 780, 56 L. Ed. 1216, and cases there cited. Indeed, it is conceded on behalf of the appellant that the latter cannot maintain an action of ejectment to recover the possession of the premises in question, because the defendant Southern Pacific Company is in possession thereof as a public service corporation; but it is insisted that the appellant has not "an adequate and complete remedy in an action for damages against said Southern Pacific Company, because damages for the taking of the land is not adequate or complete as a substitute for the rights of ownership in real property, and that under the allegations of the amended bills appellant could not be required to accept damages unless the land involved be necessary to the exclusive use of appellee Southern Pacific Company as a public service corporation, and that it is entitled to test the question of the necessity of the taking (in equity) and is not compelled to admit the necessity and sue in damages"; and that position is largely based upon the decision of the Circuit Court of Appeals of the Eighth Circuit in the case of Stuart v. U. P. R. R. Co., 178 Fed. 753, 103 C. C. A. 89, where Judge Van Devanter (now Mr. Justice Van Devanter of the Supreme Court), in delivering the opinion of the court, said, among other things:

"It is true, generally speaking, that in the courts of the United States a suit to quiet title cannot be maintained by a complainant who is not in possession against a defendant who is in possession; and this is so because there is a plain, complete, and adequate remedy at law. Whitehead v. Shattuck, 138 U. S. 146, 150, 11 Sup. Ct. 276, 34 L. Ed. 873; United States Mining Co. v. Lawson, 67 C. C. A. 587, 134 Fed. 769; Lawson v. United States Mining Co., 207 U. S. 1, 9, 28 Sup. Ct. 15, 52 L. Ed. 65. But it also is true that in exceptional cases, where there is no such remedy at law, the general rule does not apply."

And the court proceeded to show that that case was one of the exceptional ones. It was a suit to quiet title to a tract of 160 acres of land patented to the complainant by the government, across which extended the right of way of the defendant railroad company. Ex-

cept as occupied by the defendant company for purposes of its right of way, the land was not in the actual possession of either party. In holding that that suit was well brought in equity the court said:

"What really is the subject of the adverse claims of the parties is a strip 400 feet in width along the appellee's railroad. Part of this is in the actual possession of the appellee, is occupied by permanent and costly railroad structures, and is being used as a right of way for strictly railroad purposes. If it be not true that the Pacific Railroad Acts granted a right of way 400 feet in width across the Eastman tract, it still is true that they authorized the acquisition, by agreement or condemnation, of a right of way thereover, not exceeding 200 feet in width. The owners of the tract did not insist that the railroad be not constructed and put in operation in advance of an exercise of this authority, but by their silence and inaction acquiesced in such construction and operation without any precedent agreement or condemnation. The railroad has been in operation since 1870, and its continued operation has become a matter of large public concern. In addition, there is a pronounced and bona fide dispute as to how much of the tract has been occupied and used as a right of way; the appellants insisting that this occupancy and use have been confined to 25 feet or less on either side of the center line of the railroad, and the appellee insisting that they have extended to 50 feet or more on either side. In these circumstances it is apparent, as we think, that the appellants are entitled to a hearing and decision as to what extent the appellee is entitled to occupy and use the tract as a right of way, that they are not entitled to oust the appellee from its actual possession or to interrupt the operation of its railroad, and that their rights can be completely and adequately determined by a suit in equity in the nature of one to quiet title, but not otherwise. As was said in Northern Pacific Railroad Co. v. Smith, 171 U. S. 260, 271, 18 Sup. Ct. 794, 798, 43 L. Ed. 157: 'There is abundant authority for the proposition that, while no man can be deprived of his property, even in the exercise of the right of eminent domain, unless he is compensated therefor, yet that the property holder, if cognizant of the facts, may, by permitting a railroad company, without objection, to take possession of the land, construct its track, and operate its road, preclude himself from a remedy by an action of ejectment. His remedy must be sought either in a suit in equity, or in a proceeding under the statute, if one be provided, regulating the appropriating of private property for railroad purposes.' Other cases of like import are Roberts v. Northern Pacific R. R. Co., 158 U. S. 1, 11, 15 Sup. Ct. 756, 39 L. Ed. 873; Penn Life Ins. Co. v. Austin, 168 U. S. 685, 698, 18 Sup. Ct. 223, 42 L. Ed. 626; New York City v. Pine, 185 U. S. 93, 22 Sup. Ct. 592, 46 L. Ed. 820; Donohue v. El Paso & Southwestern R. R. Co., 214 U. S. 499, 29 Sup. Ct. 698, 53 L. Ed. 1060. There may be cases in which an action for compensation or damages under the statute would afford a plain, complete, and adequate remedy; but this is not such a case, for, in the absence of a prior determination of the dispute respecting the width of the strip actually occupied and used as a right of way, such an action could not be maintained without either conceding the greater occupancy and use asserted by the appellee or risking a recovery of less than the actual damages. A remedy cannot be regarded as plain, complete, and adequate when to pursue it is to jeopardize a part of what is claimed, irrespective of the merits."

It is thus apparent that the sole ground upon which that case was held a proper one for equity was the dispute and uncertainty over the extent of the actual possession of the defendant company and the limits of its right of way under the congressional grant, whereas in the present case the bills expressly allege that the defendant Southern Pacific Company is in the exclusive possession of the entire tract in controversy for purposes of public use. If not acquired by agreement from the owner of the property, beyond question it could have been condemned to the extent that it was necessary for those

purposes. And in such an action both the necessity and the extent of the use are pure questions of law. It was so at common law, and it is so by statute of California. Said the Supreme Court in Kohl et al. v. United States, 91 U. S. 367, 376, 23 L. Ed. 449:

"The right of eminent domain always was a right at common law. It was not a right in equity, nor was it even the creature of a statute. The time of its exercise may have been prescribed by a statute; but the right itself was superior to any statute. That it was not enforced through the agency of a jury is immaterial; for many civil as well as criminal proceedings at common law were without a jury."

The statute of California in providing for the condemnation of private property declares, among other things, that before such property can be taken it must appear "(1) that the use to which it is to be applied is a use authorized by law; (2) that the taking is necessary to such use"—which latter provision necessarily includes the right to determine to what extent the proposed taking is necessary. Section 1241, Code Civil Procedure.

Taking the appellant to have the legal title to the land in question, as alleged in the bills, they nevertheless show upon their face that the defendant Southern Pacific Company is in the actual possession and use of the whole of it in pursuit of its business as common carrier of passengers and freight, and it must be, as it is, conceded by the appellant that it is not entitled to retake such possession, but, as has been shown, is restricted to a suit for such damages as may have been sustained by the owner. Such right of action for damages, however, is, as the Supreme Court has distinctly held in the cases first above cited, in the party holding the title at the time of the original wrongful entry. The bills in question fail to show that the complainant was such owner at that time, and, the appellant declining to further amend, the court below, in our opinion, was right in dismissing them—it being, we think, idle to contend that the bills, in view of their averments, make any case either in equity or at law against the defendant Central Pacific Railway Company cognizable in a court of the United States, for they show, not only that that company as well as the complainant was out of possession of the property at the time of the commencement of the suit, but that the whole of it was then in the actual possession of a common carrier of passengers and freight, actively engaged in such transportation business, for which reason the alleged owner is, as has been seen, precluded from recovering the property itself, but is remitted to an action at law for the recovery of such damages as may have been sustained by the taking and appropriating of the property to public use. Authorities supra.

The judgment is affirmed.

GILBERT, Circuit Judge. I dissent from the opinion of the majority of this court on two grounds:

First. The defendants in the court below, the appellees here, answered the bill of complaint on the merits and asked for equitable relief, without raising any objection to the jurisdiction in equity on the

ground of the existence of a remedy at law. The rule is well settled that, by thus answering in a case where it is competent for a court of equity to grant the relief sought, the defendant waives the objection that the plaintiff has a plain and adequate remedy at law. Southern Pac. R. Co. v. United States, 133 Fed. 651, 66 C. C. A. 581; Southern Pac. R. Co. v. United States, 133 Fed. 662, 66 C. C. A. 560; Southern Pacific Railroad Co. v. United States, 200 U. S. 341, 26 Sup. Ct. 296, 50 L. Ed. 507; Cobban v. Conklin, 208 Fed. 231, 125 C. C. A. 431.

Second. I cannot assent to the proposition that the appellant has an adequate remedy at law. If the allegations of the bill are true—and we must take them to be true—the appellant owns land of which the appellees have taken possession, and which is not necessary for their uses as railroad corporations. What remedy has the appellant at law? It is conceded that it cannot bring ejectment to recover the possession of that portion of the land which is actually used and needed for railroad purposes. It must also be admitted that it cannot bring ejectment to recover possession of the remainder of the land, for the limits and boundaries of that land have never been ascertained, and they cannot be determined in an action of ejectment. No court has adjudged, and no statute has fixed, the quantity and limits of the land that the appellees shall occupy for their railroad. What remedy at law remains to the appellant? The majority of the court say an action for damages. But an action for damages, like an action of ejectment, could not be made to perform the function of determining the boundary line between that which the appellees shall properly occupy and that of which the appellant has the right to recover the possession. It is true, as was said by the court below, that the right of eminent domain always was a right at common law. But it is a right available only to the corporation which seeks to condemn. The landowner cannot bring the statutory action at law to determine whether his land is needed for public use, the extent of the necessary use, and the damages recoverable therefor. When his land has actually been taken for public use, his only remedies are an action either for damages, case, debt, or ejectment. 15 Cyc. 985, 986. In none of those actions can he bring in issue the question whether his land is needed for public use, or the extent of the necessary public use, and in no such action could the appellant in this case obtain an adjudication of the important question for which the suit was brought, viz. the quantity of land that the appellees may lawfully occupy, and the boundaries of the land which shall remain to the appellant.

A case in point is Stuart v. Union Pac. R. Co., 178 Fed. 753, 103 C. C. A. 89, in which it was held that, where a landowner without objection permits a railroad company to remain upon his land, construct its road thereover, and put the same in operation, without first making compensation therefor, he is precluded from ousting the railroad company from its actual possession or interrupting the operation of its road, and that where the extent of the company's actual occupancy and use of the land for railroad purposes is in dispute, so that the landowner cannot maintain an action merely to recover compensation, with-

out either conceding the greater occupancy and use by the railroad company or risking a recovery of less than he is actually entitled to receive, he is without a plain, complete, and adequate remedy, save by a suit in equity in the nature of one to quiet title, and this although he be not in possession of any part of the land. The decision in that case was affirmed in Stuart v. Union Pac. R. R. Co., 227 U. S. 342, 33 Sup. Ct. 338, 57 L. Ed. 535.

The appellant, having bought the land in controversy after the occupation thereof by the appellees, did not acquire by the purchase the right to recover damages for the original taking of such land as was necessary for railroad uses. Roberts v. Northern Pacific Railroad, 158 U. S. 1, 15 Sup. Ct. 756, 39 L. Ed. 873; Kindred v. Union Pacific R. R. Co., 225 U. S. 582, 32 Sup. Ct. 780, 56 L. Ed. 1216. But it unquestionably did acquire the title and the right to the possession of all the land conveyed that was not necessary for such uses, and it has the right to have the boundaries of that land delimited, and its title thereto established. But, according to the opinion of the majority of this court, it is an empty right, for they deny the appellant a remedy. Their judgment is that the appellant can never question the right of the railroad companies to occupy and use the whole of the land in controversy, nor litigate the question of the quantity of land that they may lawfully claim or use, and that the appellant must abandon its claim to the title to any of such land, and relinquish the possession of the whole thereof to the appellees, for this is what it means when they say that the appellees are in possession of the whole of it, and the appellant's only remedy is an action for damages.