SILVER KING COALITION MINES COMPANY *v.* CONKLING MINING COMPANY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 158.   Petition for rehearing.—Decided April 11, 1921.

1. Petition for rehearing treated as a motion for the determination of questions argued but left open by the former decision, 255 U. S. 151. P. 25.
2. Within the intent of the mining law, Rev. Stats., § 2322, with respect to the right to pursue a vein extralaterally on its dip, those are the "end lines" of a lode location that cut across the strike of the vein, if it crosses the location.  P. 25.
3. A presumption that there was a discovery vein crossing the end lines of a location as laid out should not be indulged, for the purpose of denying extralateral rights to a vein crossing the side lines, where there is substantial evidence that this was the only vein apexing within the location and no substantial evidence to the contrary. P. 26.
4. Where the vein of a patented claim crossed the location transversely, *held* that the right to pursue it on dip beneath an adjacent junior patented claim was not affected by the fact that either the discovery shafts of the senior claim or the vein would be left outside of it if its side lines (located as end lines) were limited as they should be, because a discovery shaft was not essential to the validity of the location at the time when it was made, and because discovery of the vein must be presumed in favor of the senior patent.  P. 27.
5. Evidence *held* to prove that one of a series of similar deposits, found at many different horizons, connected with a fissure vein and similar in composition to the ore in the fissure, was a part of that vein rather than a distinct bedded deposit.  P. 27.

Decree (230 Fed. Rep. 553) reversed.

PETITION by the respondent for a rehearing as to questions presented but left undecided in s. c., 255 U. S. 151.   The questions are disposed of on the argument as originally made.

*Mr. William D. McHugh, Mr. William W. Ray, Mr. William H. King* and *Mr. Francis B. Critchlow,* in support of the petition. The following matter is taken from one of their briefs used at the argument preceding the former decision:

Under no circumstances has the owner of a vein which has its strike across the location the right to follow the vein extralaterally through the plane of the located end line. The question has never been decided by this court,—reviewing *Flagstaff Silver Mining Co.* v. *Tarbet,* 98 U. S. 463; and *Argentine Mining Co.* v. *Terrible Mining Co.,* 122 U. S. 478. In *King* v. *Amy & Silversmith Mining Co.,* 152 U. S. 222, first appears the dictum that the end lines are to be treated as side lines, repeated in *Last Chance Mining Co.* v. *Tyler Mining Co.,* 157 U. S. 683; *Del Monte Mining Co.* v. *Last Chance Mining Co.,* 171 U. S. 55; and *Walrath* v. *Champion Mining Co.,* 171 U. S. 293.

Even if we may allow the necessity or propriety of renaming the located end lines in order to distinguish them from the located side lines under their new relation, this would not involve the necessity or the propriety of defining the office and function of such located end lines under such abnormal conditions. The four cases above referred to are the only ones in which this court has expressed any opinion as to the rights of a locator to extralateral pursuit of his vein beyond the located end lines, where by legal construction the located side lines have become the end lines of his location.

The question here involved is one as to which courts and text writers are at variance. No case has arisen in any of the Circuit Courts of Appeals in which it has been decided so far as we are aware. The principle was conceded by counsel for both parties and adopted by the Circuit Court of Appeals of the Ninth Circuit in *Bunker Hill & Sullivan Mining Co.* v. *Empire State-Idaho Mining Co.,* 109 Fed. Rep. 538, both parties claiming the ore bodies

in dispute through the right of extralateral pursuit through located end lines.

In the case at bar the court below (230 Fed. Rep. 561) did not find it necessary to decide the point, for the reason that it determined, as a matter of fact, that the discovery vein coursed along and not across the locations, and therefore that the end lines in question were in law and in fact the end lines of the several claims.

Three Circuit or District Courts of the United States have felt themselves constrained to follow the *dicta* of this court in the cases above referred to. One only of these cases was reported. It is the opinion of District Judge Townsend of the District of Connecticut, in a ruling on demurrer to a complaint upon a contract relating to mining claims in Arizona. The same holding was made by District Judge Marshall in *Keeley* v. *Ophir Hill Mining Co.*, (unreported), and followed by him in the case at bar. See also, *Catron* v. *Old*, 23 Colorado, 433; *Stewart Mining Co.* v. *Ontario Mining Co.*, 23 Idaho, 724.

Commentators on mining law disagree on this question. 2 Lindley on Mines, § 589; 2 Snyder on Mines, 721; Morrison's Mining Rights, 15th ed., 218.

This gift of Congress to the locator and the rule which it attempted to establish for his benefit have reference to an extraordinary right superadded to the common-law rights inhering in the grant of the bounded premises. This right was upon the statutory condition that in laying the lines of his location upon the surface he lay them so that the side lines, to-wit, the longer lines, embrace the outcrop of the vein upon its strike and the end lines cross the same so that planes drawn through the latter shall bound his rights. In every case the burden lies upon a party claiming extralateral rights to show that he comes strictly within the conditions of the grant. 230 Fed. Rep. 561. See *Iron Silver Mining Co.* v. *Elgin Mining Co.*, 118 U. S. 196.

The locator who has framed his notice of location, placed and maintained his stakes, and especially the locator who has caused his land to be surveyed and monumented by officials of the Land Department, should not thereafter be permitted to claim to the injury of a junior locator that a mistake was made. It is a clear case of estoppel.

Whatever may be the holding of this court as to the right generally to follow a vein upon its dip through the located end lines, in the case at bar no such right exists, for the reason that the apex of the Crescent Fault Fissure is more than 300 feet distant from the discovery point. No reason can be conjectured why it is not as essential to draw the side lines of the location at a distance not exceeding 300 feet on each side of the center of the lode as it is to draw the end lines parallel. A violation of the latter requirement destroys, or at least limits, the right of extralateral pursuit, and there is no reason why a violation of the former should not have the same effect as to all the surface in excess of what would be within a proper location.

It is well established that a United States patent issued without authority of law as well as one issued in spite of a law prohibiting its issuance, is invalid. Costigan, Mining Law, 393; 2 Lindley on Mines, § 362; *Lakin* v. *Dolly,* 53 Fed. Rep. 333; *Lakin* v. *Roberts,* 54 Fed. Rep. 461; *Richmond Mining Co.* v. *Rose,* 114 U. S. 576; *Doolan* v. *Carr,* 125 U. S. 618; *Peabody Gold Mining Co.* v. *Gold Hill Mining Co.,* 111 Fed. Rep. 817; *Jones* v. *Wild Goose Mining Co.,* 177 Fed. Rep. 95.

*Mr. Thomas Marioneaux, Mr. W. H. Dickson, Mr. A. C. Ellis, Jr.,* and *Mr. R. G. Lucas* against the petition. The following is extracted from their briefs used at the argument preceding the former decision:

Soon after the passage of the Act of 1872, it was deter-

mined by this court in *Flagstaff Silver Mining Co.* v.
*Tarbet*, 98 U. S. 463, that, when the vein on its course and
at its top crossed the located side lines of the claim, these
side lines must be taken to be the legal end lines beyond
which the locator is not permitted to pursue his vein
either at or beneath the surface. In that case, as well as
in *King* v. *Amy & Silversmith Mining Co.*, 152 U. S. 222,
228; *Iron Silver Mining Co.* v. *Elgin Mining Co.*, 118
U. S. 196; *Del Monte Mining Co.* v. *Last Chance Mining
Co.*, 171 U. S. 55, 89; and *Last Chance Mining Co.* v. *Tyler
Mining Co.*, 157 U. S. 683, it is said that, where a vein so
crosses the side lines of the claim, these lines are the end
lines and the (located) end lines the side lines of the claim.
In none of these cases, however, was the question of the
right of the locator to follow his vein extralaterally be-
tween planes drawn vertically through the located side
lines extended in their own direction involved, but
in each the courts manifestly entertained the opinion
that such right existed. The question of this right was
clearly presented and upheld, however, in the case of
*Empire Milling Co.* v. *Tombstone Mill Co.*, 100 Fed. Rep.
910, 913–914. See also *Last Chance Mining Co.* v. *Bunker
Hill & Sullivan Mining Co.*, 131 Fed. Rep. 579, 586–8;
*Empire State-Idaho Mining Co.* v. *Bunker Hill & Sullivan
Mining Co.*, 131 Fed. Rep. 591, 603–4; *Empire Milling
Co.* v. *Tombstone Mill Co.*, 131 Fed. Rep. 339, 344; *Gleeson*
v. *Martin White Co.*, 13 Nevada, 459–460.

Again, it has been decided that, in case the vein at its
top and on its course crosses one end line of the claim, and
is cut off and terminates before the opposite end line is
reached, the locator is under the law entitled to the vein
throughout its depth between planes drawn one through
the end line so crossed, and another parallel thereto,
through the point where the vein terminates. *Carson City
Gold & Silver Mining Co.* v. *North Star Mining Co.*, 73
Fed. Rep. 597, 602–3.

It is well settled, too, that, where a vein crosses one end line of the claim but departs therefrom through a side line thereof, the locator is entitled to such vein through its entire depth between planes drawn vertically downward, one through such crossed end line and the other parallel thereto through the point where the vein passes out of the claim through such side line. *Del Monte Mining Co.* v. *Last Chance Mining Co.*, 171 U. S. 55.

The statute should be liberally construed in favor of the locator, so as to give him every benefit of it in its true spirit and intent. *Consolidated Wyoming Gold Mining Co.* v. *Champion Mining Co.*, 63 Fed. Rep. 540; *Keeley* v. *Ophir Hill Mining Co.*, U. S. District Court, Utah (unreported); *Tyler Mining Co.* v. *Last Chance Mining Co.*, 71 Fed. Rep. 848, 851.

In each of the foregoing instances of irregular locations—irregular in that they were not laid upon the vein or lode in the manner which the courts have said Congress contemplated—the extralateral right of the locator was upheld on the ground that from a correct interpretation of the act it was apparent that the intention of Congress was to secure to the locator the same length of the vein at depth extralaterally as that of the top or apex thereof included within the boundaries of his location; and that it is the duty of the courts, if possible, to put such a construction upon the act as will give effect to this intention.

To assert that the locator must place his claim along the course of the vein at his peril is in many cases to compel him to perform the impossible, especially with claims as narrow as those here involved. *Consolidated Wyoming Gold Mining Co.* v. *Champion Mining Co.*, 63 Fed. Rep. 540, 548. To contend that the mining statutes are violated by locating across the apex of the vein is to virtually ignore all of the side-end-lines cases and nullify the repeated holding of this court that the lines crossed by the

apex of the vein become the true end lines under such circumstances.

From the issuance of the patent a conclusive presumption arises that prior to final entry a valid location of the claim, based upon a discovered vein, had been made. When many years thereafter it is made to appear that there is but one vein or lode, the top or apex of which is found within the boundaries of the claim, and this vein, instead of being lengthwise, is crosswise of the claim, the only legitimate conclusion, it would seem, would be that this was the discovery vein, that the course thereof had been mistaken by the locator; and his right to follow the same extralaterally between planes drawn through the located side lines should be upheld.

Under the logic of the decision in *Jim Butler Tonopah Mining Co.* v. *West End Consolidated Mining Co.*, 247 U. S. 450, we have extralateral rights upon the Crescent fissure vein even if it be true, which we do not concede, that it must be presumed that there is in each claim a vein or lode running parallel to its side lines. As we interpret that case, it definitely and positively disposes of the contention that the locator has less rights upon what has been called incidental veins than he has upon the so-called discovery vein.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a suit brought by the respondent to establish its right to a large body of ore found within the lines of the respondent's patent as it construed that document. The main contest concerned the southwesterly 135.5 feet of the patent as laid out by courses and distances, from which was taken the main body of the ore. At the argument the petitioner's statement was that "practically all the ore in controversy was taken from within this 135.5 foot strip."

The decision with regard to that strip was in favor of the petitioner and as it seemed possible that the respondent would not be able to establish that any appreciable amount of ore was taken from the land belonging to it, and that it might not care to attempt the proof, the questions raised with regard to such ore if any were left undecided according to the usual practice.  But the respondent points out that the petitioner has admitted that a small amount of ore, not exceeding $20,047.50 in value, did come from the respondent's land and presses for a decision concerning its right to that.  The motion is put in the form of a petition for rehearing; but the main thing asked and the only thing for which we see any reason is that we decide the questions argued, but left open by us.  That we proceed to do.  Nothing that has been decided will be reopened, but leave to file the petition is granted to that single end.

It is not disputed by the respondent, the Conkling Mining Company, that a fissure on its strike crosses the parallel side lines of the petitioner's claims and on its dip passes beneath the Conkling mining claim in the immediate vicinity of the ore body in dispute and between vertical planes drawn through the parallel side lines of the petitioner's claims and continued in their own direction.  What is disputed is that this ore body is any part of the vein referred to, known as the Crescent Fissure, and that, if it is, the petitioner has any right to treat the end lines of its claims as side lines and to pursue the vein under ground beyond the vertical planes drawn through those lines.

We take up the last question first.  The typical case supposed by Rev. Stats., § 2322 is that of a claim laid out lengthwise along the strike of a vein.  In that case the end lines of the location will limit the extralateral right.  But that case is only the simplest illustration of a principle.  The general purpose is to give a right to all of the vein

included in the surface lines, if there is only one, provided
the apex is within the location. It often must happen
that the strike of the vein is not known but must be con-
jectured at the time of discovery, and that the location is
across instead of along the vein. This has been obvious
always and therefore it would be wrong to interpret the
words "end lines" narrowly; as meaning the shorter ones
in every instance. Those are the end lines that cut across
the strike of the vein if it crosses the location. We see
no sufficient reason for thinking that because the dis-
coverer has not claimed as long a portion of the strike
as he might have, he should be deprived of even his
diminished lateral rights. It has been the accepted
opinion of this Court for many years that where as here
the strike of the vein crosses the location at right angles
its dip may be followed extralaterally, whatever the direc-
tion in which the length of the location may run. If across
the strike as here, the side lines, as it commonly is ex-
pressed, become the end lines. Subsequent locators know
as well as the original ones that the determining fact is
the direction of the strike not the first discoverer's guess.
*Flagstaff Silver Mining Co.* v. *Tarbet,* 98 U. S. 463. *King*
v. *Amy & Silversmith Mining Co.,* 152 U. S. 222, 228.
*Del Monte Mining & Milling Co.* v. *Last Chance Mining &
Milling Co.,* 171 U. S. 55, 90, 91. *Jim Butler Tonopah
Mining Co.* v. *West End Consolidated Mining Co.,* 247
U. S. 450, 453.

But it is said that when the end lines are determined
they are end lines for all purposes even if there are different
veins running in different directions having their apexes
within the claim. *Walrath* v. *Champion Mining Co.,* 171
U. S. 293. And it is argued that there is a presumption
that has not been overcome that there was a discovery
vein running parallel with the side lines; that this deter-
mined the end lines and that therefore the petitioner got
no extralateral rights in the Crescent Fissure. The Cir-

cuit Court of Appeals, approaching the petitioner's claim as a claim of an exceptional privilege, seems to have attached a weightier burden of proof to it than we are disposed to do. They were not satisfied that the discovery vein which determined what the end lines should be was not some other vein than the Crescent Fissure. But we see no substantial evidence that there was another vein. We have the distinct testimony of experts that there was no such and we agree with the view of the District Judge sustaining the petitioner's extralateral rights. Whether there are other answers to the contention we need not decide. See *Jim Butler Tonopah Mining Co.* v. *West End Consolidated Mining Co.*, 247 U. S. 450, 454, *et-seq.*

It is urged that, if the end lines be taken as the side lines, then the discovery shafts being four hundred feet distant from the apex of the Crescent Fissure left either the vein or the discovery outside the location with the side lines limited as they should be. But at that time there was no requirement making a discovery shaft essential to a valid location. And in any event our conclusion being that the petitioner must be presumed to have discovered the Crescent Fissure, however it may have been done, the distance of the shafts does not affect the case.

The only question that remains is whether the ore within the respondent's lines formed part of the Crescent Fissure vein. The Circuit Court of Appeals in view of its opinion upon the last point made no decision upon this. But the experienced District Judge after careful consideration was of the opinion that the ore belonged to the vein. We see nothing to convince us that he was wrong. The position of the respondent is that the ore in controversy is a distinct bedded deposit. But as the District Judge remarks, similar deposits are found at many different horizons, connected with the fissure and similar in composition to the ore in the fissure. The deposit in question was like the others. Whether we consider merely the

practical fact of the continuously occurring deposits along the course of the vein or the theory of their origin which seems to us the most probable, we believe the District Judge to have been right.

<div style="text-align: right">

*Decree of Circuit Court of Appeals reversed.*

*Decree of District Court affirmed.*