**UTAH CONSOL. MINING CO. v. UTAH APEX MINING CO. (four cases).***

(Circuit Court of Appeals, Eighth Circuit. November 14, 1921.)

Nos. 5878–5881.

**Mines and minerals ☞31(3)—A limestone bed held not to constitute a broad vein giving extralateral rights throughout entire thickness.**

A bed of limestone of an average thickness of 200 feet, but varying in thickness from a few feet at the surface to 400 or 500 feet in its dip, lying between beds of quartzite, *held* not to constitute a single broad vein or lode giving extralateral rights to claims on its apex throughout its entire thickness, on evidence that, while it contained a clearly defined metal bearing vein, lying for the most part on its foot wall, which the owner of the apex claims he was entitled to follow extralaterally, it was not generally mineralized. Also *held* that certain other fissure veins of ore contained in such limestone bed were not a part of the foot wall vein, but were separate and distinct therefrom and subject to different ownership.

Appeal from the District Court of the United States for the District of Utah; Tillman D. Johnson, Judge.

Suit in equity by the Utah Consolidated Mining Company against the Utah Apex Mining Company. Decree for defendant, and complainant appeals. Affirmed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Certiorari denied 256 U. S. ——, 42 Sup. Ct. 272, 66 L. Ed. ——.

John P. Gray, of Cœur d'Alene, Idaho (A. C. Ellis, Jr., of Salt Lake City, Utah, on the brief), for appellant.

J. A. Marshall, of Salt Lake City, Utah, and William E. Colby, of San Francisco, Cal., for appellee.

Before CARLAND, Circuit Judge, and LEWIS and YOUMANS, District Judges.

CARLAND, Circuit Judge. These cases were brought by appellant against appellee for the purpose of quieting the title to certain ore bodies found in the Yampa limestone located in the Bingham mining district, Utah, and for injunction and accounting. Appellant claims to be the owner of these ore bodies by virtue of extralateral rights resulting from its ownership of certain mining claims known as Yampa Extension Northeast, Yampa, Mercer and Mercer No. 2, Keepapitchinin, and Rattlesnake. As different segments of the vein or lode upon which these claims were located are included in the claims mentioned, a case was brought upon each claim. The four cases were by stipulation consolidated for trial and tried as one case. They have been heard here as one case, and will be so treated in this opinion. The appellee in its answer alleged that it was the owner of mining claims located in the Bingham mining district, Utah, known as the Nellie Bly, York, Atlantic, Petro, Minnie, and Andy No. 2, and that by virtue of said ownership, including extralateral rights, it was the owner of the ore bodies in controversy. Appellee, however, did not pray for any affirmative relief. The trial court decided that appellant had not by a preponderance of the evidence sustained its contention, that the Yampa limestone was a broad lode, but did hold that the flat sheet of ore lying between the quartzite below and the limestone above was the vein which had its outcrop within the boundaries of the mining claims of the appellant and gave to the appellant extralateral rights beneath the surface of the mining claims of appellee, but that the ore bodies in dispute were not a part of that vein. Judgment was therefore entered for the appellee. The following is a statement made by the trial court, with which we agree, as to what the evidence showed in regard to the geological condition of the country where the ore bodies in dispute are located:

"Geologically the country involved in this litigation consists of an underlying quartzite bed or stratum of unknown extent and thickness. Upon this quartzite there is a limestone bed, called the Highland Boy limestone, of an average thickness of about 250 feet, by varying in thickness from about 100 to 400 feet. Above the Highland Boy limestone there is a bed of quartzite having an average thickness of about 250 feet, and above this quartzite bed there is another limestone bed, called the Yampa limestone, with an average thickness of about 200 feet, but varying in thickness from a few feet at or near the surface to 400 or 500 feet at depth in the neighborhood of the steepening of the dip of the limestone. Above the Yampa limestone there is a quartzite stratum having a thickness of about 700 feet, and above this stratum of quartzite, a limestone bed, called the Parnell, of about 30 feet in thickness. Upon the Parnell limestone rests a quartzite bed containing within it here and there thin lenses of limestone. This bed of quartzite has a thickness of about 280 feet. Above this quartzite there is a thin bed of limestone called the Petro, and above the Petro an indefinite thickness of quartzite in which are found here and there thin lenses of limestone.

"The limestone and quartzite beds above mentioned are sedimentary rocks, and, as laid down in the bottom of the ocean, were originally level. Later and in the mountain making of this region these sedimentary beds were uplifted and more or less tilted and bent so that now they have a dip northerly at the surface and for some considerable distance below the surface of about 30 degrees, and an easterly and westerly strike across the country.

"Subsequent to the mountain building which resulted in the tilting of these sedimentary beds of limestone and quartzite there was an intrusion of porphyry—an igneous rock coming up from the depths, apparently from the south and east—which cut through, absorbed, or threw aside portions of the sedimentary beds of limestone and quartzite lying above. After this intrusion of porphyry the ores and mineral contained in the mining properties of the parties to this action were deposited."

Appellant's mining claims are located on the Yampa limestone as above described. Appellant maintains:

(1) That the Yampa limestone within its claims between quartzite boundaries, situated as it is in the Bingham district, constitutes in the eyes of the miner and under a proper construction of the mining law a single lode or vein of metal bearing rock.

(2) That the ore bodies mined by the appellee and in controversy are so situated in the ground, so related to one another and to the vein which is admitted in the answer to belong to the appellant, that they cannot be separated from it, and are therefore part of it.

(3) That the Yampa vein or lode has been developed continuously in ore from the surface to the ore bodies in controversy.

The appellee denies that the Yampa limestone bed is sufficiently altered or generally mineralized as to justify its designation as a vein or lode. It asserts that the ore bodies in controversy are closely associated with distinct fissure veins which were the source of the mineralization of these particular bodies which are situated vertically beneath the surface of the mining claims owned by appellee, and that these fissure veins have their apices in appellee's claims. Appellee, however, admits that there is a vein or lode which counsel calls the "Yampa foot wall vein," extending lengthwise through the mining claims of appellant and dipping beneath the surface of the claims of appellee so located that the appellant has extralateral rights thereon, but denies that the ore bodies in dispute are a part of any such vein or any vein apexing in the mining claims of appellant. There is no dispute as to appellant's ownership of its several mining claims nor the position of the apex of the Yampa limestone in those claims. It is also undisputed that the Yampa limestone has definite boundaries consisting of overlying and underlying quartzite, and that the ore bodies in controversy are within the Yampa limestone. It is also admitted that the ore bodies in dispute are within planes drawn vertically through the parallel end lines of appellant's claims extended with the dip of the Yampa limestone bed. It will be seen from the statement so far made that the questions for decision are: (1) Whether or not the Yampa limestone bed is sufficiently mineralized so as to constitute a vein or lode within the contemplation of the mining laws of the United States. (2) Are the ore bodies in dispute a part of the so-called Yampa foot wall vein? If either question is answered in the affirmative, judgment must be entered for appellant. The evidence shows and the trial court so found

that the Yampa foot wall vein is essentially a fissure vein, generally following the contact between the Yampa limestone bed and the underlying quartzite and possessing a sheetlike character. The ore bodies developed by the appellant and its predecessors consist of this flat sheet of ore whose apex extends a distance of about 2,500 feet within the boundaries of appellant's claims or some of them, and certain stopes above it. For short distances, but infrequently, this fissure vein passes entirely into the overlying limestone, and again is found in the underlying quartzite, but, as has been stated, it is generally confined between the two rocks. The parties to this litigation do not disagree as to the extent of the workings of appellant, but in accord with their different contentions one side says that these workings were along the strike and dip of the limestone bed, and the other says that said workings were along the strike and dip of the foot wall vein. As thus explained, it may be stated that the vein has been developed by appellant or its predecessors on its strike upwards of a mile and on its dip for nearly 3,000 feet. Measured horizontally, these workings have extended hundreds of feet beneath the surface of appellee's claims. Ore of a value in excess of $25,000,000 has been mined. The vein has an average width of from 4 to 8 feet. The mineral of the vein is usually separated from the hanging wall or limestone side by a gouge or parting. The mineralization of the vein does not fade into the overhanging limestone, but is clearly separated from it. In the neighborhood of the ore bodies in dispute the limestone bed and the flat sheet of ore in sympathy with it turn over on their dip and descend to the deep in nearly a vertical position along the foot wall contact. The Yampa limestone has an average thickness of about 200 feet, but varies in thickness from a few feet at the surface to 400 or 500 feet where at its dip it becomes almost vertical. The dimensions of this limestone become material in determining its mineralization, as the amount of ore must to a certain extent be compared with the body of rock which it is claimed the ore mineralizes. When this comparison is made it seems plain that a large part of the Yampa limestone is unmineralized rock. The trial court found, and there is evidence to support its finding, that—

"Commencing near the surface and a short distance below the outcrop of the Yampa limestone, and extending in a northeasterly direction for a distance of approximately 1,000 feet, there are a number of lead stopes in the limestone above the thin, flat sheet of copper ore described above; and beginning at the easterly end of the lead stopes just mentioned there are a group of copper stopes in the limestone above the thin flat sheet of copper ore, running almost east and west, a distance of 700 or 800 feet.

"Except the group of lead and copper stopes in the limestone above the flat sheet of ore above described, there are no ore bodies or mineralization not clearly associated with the flat sheet of ore, until the ore bodies in dispute are reached below.

"The limestone above and overlying this thin, flat sheet of ore—in the country intervening between the ore bodies in dispute and the local occurrences of lead and copper ore in the body of the limestone near the surface, a distance along the dip of about 1,800 feet, and east and west along the strike a distance of about one mile—is, except to a very limited extent, undeveloped and unprospected, and, so far as known, is practically unmineralized, unchanged, unbroken limestone."

Among the lead and copper stopes mentioned by the court are the Abe Raise, Sulphur, Stearns East, Stearns West, and Sullivan stopes. An examination of the evidence in relation to these stopes and other ore bodies convinces that they cannot be said when taken in connection with the foot wall vein to make of the whole body of limestone a single broad lode. Counsel for appellant, however, confidently claim that when the definitions of what constitutes a vein or lode, as that term is used in the Acts of Congress of 1866 (14 Stat. 251) and 1872 (Comp. St. § 4614 et seq.), are considered, and when the character of the mineralization of the Eureka lode in Eureka Mining Co. v. Richmond M. Co., 4 Sawy. 302, 8 Fed. Cas. pp. 819–825, No. 4,548, and the Jordan lode in U. S. M. Co. v. Lawson, 134 Fed. 769, 67 C. C. A. 587 (8th Cir.), are compared with the Yampa limestone claimed as a lode in the present case, there can be no escape from the conclusion that the Yampa limestone is a broad lode. Justice Field in the Eureka Case defined a lode as follows (italics ours):

"We are of opinion, therefore, that the term as used in the acts of Congress is applicable to any zone or belt of *mineralized rock* lying within boundaries clearly separating it from the neighboring rock. It includes, to use the language cited by counsel, all deposits of mineral matter found through a *mineralized zone* or belt coming from the same source, impressed with the same forms, and appearing to have been created by the same processes."

In regard to the limestone which in the Eureka Case was held to be a lode, Justice Field said:

"The limestone found between these two limits—the wall of quartzite and the seam of clay or shale—has, at some period of the world's history, been subjected to some dynamic force of nature, by which it has been *broken up, crushed, disintegrated, and fissured in all directions, so as to destroy, except in places of a few feet each*, so far as explorations show, all traces of stratification, thus specially fitting it, according to the testimony of the men of science, to whom we have listened, for the reception of the mineral which, in ages past, came up from the depths below in solution, and was deposited in in it. Evidence that the whole mass of limestone has been at some period, lifted up and moved along the quartzite, is found in the marks of attrition engraved on the rock. *This broken, crushed, and fissured condition pervades, to a greater or less extent, the whole body*, showing that the same forces which operated upon a part, operated upon the whole, and at the same time. Wherever the quartzite is exposed, the marks of attrition appear. Below the quartzite no one has penetrated. Above the shale the rock has not been thus broken and crushed. Stratification exists there. If in some isolated places there is found evidence of disturbance, that disturbance has not been sufficient to affect the stratification. The broken, crushed, and fissured condition of the limestone gives it a specific, individual character, by which it can be identified and separated from all other limestone in the vicinity."

In Mining Co. v. Lawson, supra, the Jordan limestone was involved. This limestone is situated in the Bingham district and is about 3,300 feet distant from the Yampa limestone. In this case this court said:

"A careful examination and consideration of the evidence clearly convinces us that the stratum of limestone constitutes a single broad vein or lode of mineral bearing rock extending from the quartzite on one side to the quartzite on the other. The limestone has been *profoundly broken, altered, and mineralized*, and has thereby obtained an individuality which, apart from

other differences, clearly distinguishes it from the neighboring rock. There is a local absence of ore in places, a continuous occurrence of it in others, and a seeming local occurrence of it in still others, but the ore bodies are not separated, one from another, by any defined boundaries. As in Eureka Consolidated Mining Co. v. Richmond Mining Co., 8 Fed. Cas. 819, 825 (No. 4548), they are parts of one greater deposit, which permeates, in a greater or less degree, with occasional intervening spaces of barren rock, the whole mass of limestone. As shown by extensive exploration and actual mining, the mineralization has been so general that its only defined limits are the quartzite walls which bound the limestone, and within it one may reasonably expect to encounter ore by driving or cross-cutting in any direction."

These definitions of a vein or lode may be accepted as generally correct. We have carefully read the opinions of the court in the Eureka and Lawson Cases and examined the facts in those cases so far as those facts were found by the court. We are quite sure that we have no authority to examine the evidence in those cases for the purpose of finding the facts ourselves for two reasons: (1) If we found them the same as stated by the court, it would serve no useful purpose. (2) If we found them to be different, it would be a retrial of those cases without jurisdiction so to do. Briefly stated, we are unable to find that the Yampa limestone is, as was said of the Eureka and Jordan lodes, broken up, crushed, disintegrated, and fissured, in all directions so as to destroy except in places of a few feet each so far as explorations show all traces of stratification, and that this broken, crushed, and fissured condition prevades to a greater or less extent the whole body of the Yampa limestone showing that the same forces which operated on a part operated on the whole and at the same time. The Supreme Court in affirming the judgment of this court in the Lawson Case said:

"Summing up our conclusions, the findings of fact as stated in the opinion of the Court of Appeals are not clearly against the testimony and must, therefore, be sustained." Lawson v. M. Co., 207 U. S. 19, 28 Sup. Ct. 15, 52 L. Ed. 65.

This remark and others found in the opinion of the Supreme Court justifies us in saying that the decision in the Lawson Case ought not to be extended to cases where the facts are not clearly the same. Again, on page 12 of 207 U. S., on page 19 of 28 Sup. Ct. (52 L. Ed. 65), the same court in the same case said:

"With reference to the conclusion of the Court of Appeals it is sufficient to say that, if the testimony does not show that it is correct, it fails to show that it is wrong, and under those circumstances we are not justified in disturbing that conclusion. It is our duty to accept a finding of fact, unless clearly and manifestly wrong."

The evidence in this case not only fails to show that the finding of the trial court was wrong on the question of a broad lode, but shows that it was right. Grand Central Mining Co. v. Mammoth Mining Co., 29 Utah, 490, 83 Pac. 648.

In considering the Yampa foot wall vein as it relates to the mineralization of the Yampa limestone, we are of the opinion that it shows too much; that is its extent and location tends to show that it is the vein or lode which gives to appellant its extralateral rights, and there-

by negatives to a certain extent the claim that the Yampa limestone is a broad lode.

It remains to consider the question as to whether the ore bodies in dispute are a part of the Yampa foot wall vein. Of course, if the claim of appellant that the Yampa limestone was a broad lode had been sustained, the question now to be considered would be immaterial, or, if it had been decided that the ore bodies in question were a part of the Yampa foot wall vein, the question of a broad lode would be immaterial, but appellant has the right to maintain its title to the ore bodies in dispute by urging alternative sources of title, although in sustaining one it abandons the other. Before taking up the question to be considered, certain criticisms made by counsel for appellant as to the decree entered below may be noticed. There was and is only one major issue presented by the pleadings for decision. That question was and is whether appellant is the owner of the ore bodies in dispute. Appellee asked for no affirmative relief. It is satisfied with the decree. The decree decided that appellant was not the owner of the ore bodies in question through either of its claimed sources of title. This met the issue presented by the pleadings. No further decision was necessary or proper. The testimony in regard to the ore bodies in question was relevant for two reasons: (1) For the purpose of showing that said bodies were or were not a part of the Yampa foot wall vein; (2) as tending to show the source of the mineralization of the Yampa limestone. It is claimed by appellant that appellee came in contact with the ore bodies in dispute prior to 1909, by driving what is called in the evidence the Parvenu tunnel, and shown upon appellee's 1,000 level maps; that this tunnel was a cross-cut about 2,000 feet in length chiefly in quartzite and entering beneath the surface on the west side of Carry fork, and so pointed that, if the Yampa limestone continued its northerly dip of 30 degrees, the tunnel would have intercepted the downward extension of the foot wall of the Yampa limestone. At the time of the driving of this tunnel, however, the steepening of the dip of the Yampa limestone had not been developed, so that the tunnel, instead of penetrating the limestone at the foot wall, barely entered the hanging wall margin of the limestone. That some 18 months later appellee, having exhausted the ore in the upper limestone lodes (Parnell and York Petro), began operations in the Yampa limestone, and from these stopes appellee has mined a large amount of ore. Appellant, gradually developing its mine and extending its workings downward upon ore bodies on the dip of the Yampa limestone, or, as appellee would say, along the dip of the Yampa foot wall vein, reached the area entered by appellee, and, as appellant claims, made connections in ore with the workings of appellee. Appellant further claims that the ore bodies removed by appellee were not discovered nor developed by following downward upon any ore or from the surface, but through crosscuts driven in a southerly direction from the Parvenu tunnel, which at that point was 1,000 feet under ground, and which had not been driven along any ore whatever. Admitting, however, all that is claimed as to the manner in which the appellee discovered the ore bodies in

dispute, we do not see how these facts have any bearing upon the question at issue. Appellee's motive or the manner in which it proceeded has no relevancy in determining whether the ore bodies in dispute are a part of the Yampa foot wall vein. As we have stated, however, the claim of appellant, we briefly state that appellee claims that the Parvenu tunnel was run entirely underneath the surface of its territory, that the Petro, Louisa, Dana, and Leonard fissures extended from the surface down for a considerable distance at the time of the running of the tunnel and were already well known, and that the tunnel was run not only for the purpose of making a connection with the bottom of one of appellee's shafts or inclines, and as a main channel for getting ore out of its mine, but also with the idea of intersecting these fissures in depth. We omit however any further discussion of this matter as immaterial.

Appellant claims that the ore bodies in dispute are a part of the Yampa foot wall vein for the reason that the evidence shows a junction or union of branches or split veins, as they are called in the record, extending from the Yampa foot wall vein to and coming in contact with the ore bodies or some of them. It is admitted by appellee that one of the branches or split veins comes down to the No. 5 ore body, or to be more specific to the fissure extending up from it where the vein is interested and cut off, but counsel contend, and we think correctly, that an admission that there is an intersection is not equivalent to an admission that there was a union or connection. We are of the opinion that the evidence shows that at the only place where the Yampa foot wall vein comes in contact with any of the ore bodies in dispute such contact constitutes an intersection and not a junction or union. As has been said before, appellee admits that appellant is the owner of such spurs and split veins which are a part of the Yampa foot wall vein.

All the witnesses for appellee testify that these spurs or veins pinch out or die in a comparatively short distance from the parent vein. Appellee mined the ore bodies in controversy for eight years before this litigation was commenced, and for six years before that time appellant knew that appellee claimed the ore bodies in dispute and was engaged in mining them. There is abundant evidence to sustain a finding by the court that the ore bodies in dispute are closely associated with a fissure and its branches or spurs which extends from the surface downward into the Yampa limestone and are not mineralogically connected with the vein underlying the limestone bed. This fissure was for several years before the commencement of this litigation known in Bingham camp as the Petro. It is so called in the evidence by appellee. In the evidence of appellant it is called the Smith fault or fissure. We must assume that the trial court found, judging from what it expressly found, that the ore bodies in dispute had their origin in the Petro fissure. Silver King Coalition Mines Co. v. Conkling Mining Co. (April 11, 1921) 256 U. S. 18, 41 Sup. Ct. 426, 65 L. Ed. ——. This fissure comes down through the limestone nearly at right angles to the Yampa foot wall vein and intersects the limestone beds. Its total width is 7 to 8 feet. We are satisfied from the evidence

that the Petro is the ore-carrying channel which mineralized the Sambo or Parvenu ore bodies, which are two separate ore zones related to the Petro fissure. What has been said in regard to the effect of the finding of the trial court upon the question of a broad lode apply also to its finding that the ore bodies in dispute were not a part of the Yampa foot wall vein. As late as Silver King M. Co. v. Conkling M. Co., supra, the Supreme Court said:

"But the experienced District Judge, after careful consideration, was of the opinion that the ore belonged to the vein. We see nothing to convince us that he was wrong."

The burden of proof to sustain both contentions of appellant, namely, that the Yampa limestone was a broad lode, and that the ore bodies in dispute were a part of the Yampa foot wall vein, was upon the appellant. We agree with the trial court that the burden was not met. We have not found it possible in an opinion of reasonable length to analyze the evidence of the experts who have testified in the case. They all have their opinions and theories, but the miner determines what a lode is largely from physical facts.

We have carefully considered the evidence, and are not convinced that the trial court was wrong upon either issue passed upon by him.

The decree below, being in our opinion right, is affirmed.